INTERMOUNTAIN SMELTING CORP. and State Insurance Fund, Plaintiffs,

v.

Anthony CAPITANO, and Special Fund of Section 35–7–69 Utah Code Ann., Defendant.

No. 16530.

Supreme Court of Utah.

March 24, 1980.

---

James R. Black of Black & Moore, Salt Lake City, for Intermountain Smelting.

Robert B. Hansen, Atty. Gen., and Frank V. Nelson, Asst. Atty. Gen., Salt Lake City, for State Insurance Fund.

Andrew R. Hurley, Salt Lake City, for Capitano.

CROCKETT, Chief Justice:

Plaintiff Intermountain Smelting Corp. (and its insurer the State Insurance Fund) challenge the manner of apportionment of workmen's compensation benefits paid to its employee Anthony Capitano as between plaintiffs, and the special fund set up by Sections 35–1–68 and 69, U.C.A., 1953, to pay for pre-existing disabilities.

On June 9, 1976, in the course of his duties in construction work, the applicant stepped on a loose board that gave way causing him to fall about 10 feet to the ground resulting in severe injury to his right ankle. As a result of that injury, the applicant received temporary total compensation benefits from June 9, 1976, to February 14, 1977, and medical compensation benefits for the care and treatment of his injury.

The problem in this case arises because the applicant had been shot in his left leg while in the service in Korea, for which he was given a 30 percent disability rating and receives $113 per month for life. As to the instant injury, the medical panel found that he had sustained a 30 percent loss of use of his right foot; that the shifting in weight had also adversely affected the use of his left foot; and that the combined effects of both injuries amounted to a loss of bodily function of 25 percent. Deriving from that report, and the analysis by the administrative law judge, adopted by the Commission, the findings are that of the 25 percent, 16½ percent is attributable to the pre-existing injury and 8½ percent to the instant one.

There appears to be no disagreement with those determinations. The controversy herein results because the Commission ordered the employer, plaintiff Intermountain Smelting Corp. (and its insurer, State Insurance Fund) to pay the entire medical compensation and temporary total benefits and refused to order a proportional contribution from the special fund provided for in Sections 35–1–68 and 69, U.C.A.1953.

Defendants argue that inasmuch as the applicant's pre-existing injury had nothing to do with the instant injury, or the medical expenses or total temporary disability incident thereto, the pre-existing disability fund, discussed below, should not be required to bear any of those expenses; and that to require it to pay such expenses will result in unjustified and improvident depletion of that special fund.

Section 35–1–69 with which we are concerned provides:

If any employee who has previously incurred a permanent incapacity . . . sustains an industrial injury *for which compensation and medical care is provided by this title* that results in permanent incapacity . . ., compensation and medical care . . . shall be awarded on the basis of the combined injuries, *but the liability of the employer for such compensation and medical care shall be for the industrial injury only* and the remainder shall be paid out of the special fund provided for in section 35–1–68 · · ··

A medical panel . . . shall . . determine first, the total permanent physical impairment . . .; second, the percentage of permanent physical impairment attributable to the industrial injury; and third, the percentage of permanent physical impairment attributable to previously existing conditions . . .. *The industrial commission shall then assess the liability for compensation and medical care to the employer on the basis of the percentage of permanent physical impairment attributable to the industrial injury only and the remainder shall be payable out of the said special fund.* Amounts, if any, which have been paid by the employer in excess of the *portion attributable to the said industrial injury* shall be reimbursed to the employer out of said special fund.

▬ There are several observations to be made in regard to our analysis of that statute. First, we acknowledge that the interpretation contended for by the defendants is not entirely without logic and plausibility; and that their desire to minimize expenditure from the previous disability special fund is understandable. But in this, as in most controversies that reach this

Court, there is another side to the coin. When there is doubt or uncertainty as to the meaning or the proper application of a statute, it is appropriate to look at it in the light of its purpose. It is apparent that the one under scrutiny here has several: one of them is to make it easier for persons who have previous injuries or disabilities to obtain employment. Another is that the objective just stated is served by conferring a benefit upon employers by minimizing the risks to them in hiring such persons.[1]

█ On that subject, it is further to be said that it is neither for the courts to criticize nor to praise, nor to condemn nor to justify, the policy as determined by the legislature. Quite aside from whatever may be said about the policy so determined, it is our responsibility to interpret and apply the statute as written in accordance with its purpose. The statute must also be considered from the standpoint of the employer. The Workmen's Compensation Act imposes liability upon him regardless of fault; and, as in all statutes which impose burdens or responsibilities upon a person, one is entitled to rely on a strict application of the statute as to the extent of his responsibility.[2]

In the case of *Intermountain Health Care Inc. v. Ortega*,[3] we dealt with this statute and pointed out the specifications of the responsibility of the employer. The statute expressly states that the " . . . *compensation and medical care* . . . shall be awarded on the basis of the combined injuries, but *the liability of the employer . . . shall be for the industrial injury only* and the remainder shall be paid out of the special fund provided for in section 35–1–68 . . . .*" (All emphasis in this opinion added.)

█ Coordinate with what has just been said is the further provision that the Commission shall then assess the liability (of the employer) for both compensation and medical care, on the basis of the percentage of the physical disability that is attributable to the industrial injury only, and the remainder shall be paid out of the special fund. We think that the reasonable conclusion to be drawn therefrom is that the employer is responsible only for the percentage of compensation and medical care which the injury occurring in his employment bears to the applicant's total disability. This conclusion is also borne out by the final provision that any amount which has been paid by the employer in excess of the *portion attributable to said industrial injury* shall be reimbursed to him out of the special fund.

█ It is regrettable to have to note that since the *Ortega* decision, some of the members of the Industrial Commission and its representatives have made known that they did not agree with that decision. They have spent considerable time complaining about it and have refused to follow it. This has resulted in the burdening of everyone involved, including this Court, with a number of appeals in which we reaffirmed the *Ortega* decision and reversed rulings of the Commission which failed to follow it.[4] If it is their conviction that the law should be different, perhaps that should be addressed to the legislature, whose function and prerogative it is to make changes or clarifications in the law.

█ The findings and order of the Commission as to the claimant's disability are affirmed, but the refusal to require contribution from the special fund for temporary total disability and medical and hospital expenses, as discussed in this opinion, is reversed. No costs awarded.

MAUGHAN, WILKINS, HALL and STEWART, JJ., concur.

---

1. See statements of Justice Tuckett, speaking for this Court in *McPhie v. U. S. Steel Corp.*, Utah, 551 P.2d 504 (1976).

2. *Ringwood v. State*, 8 Utah 2d 287, 333 P.2d 943 (1959).

3. Utah, 562 P.2d 617 (1977).

4. See *White v. Industrial Comm'n.*, *Nebo School District et al. v. Cragen et al.*, and the *Paris Co. et al. v. Industrial Comm'n. et al.*, Utah, 604 P.2d 478 (1979).