**August PAOLI, Plaintiff,**

v.

**COTTONWOOD HOSPITAL (Self Insured) and Second Injury Fund, Defendants.**

**No. 17977.**

Supreme Court of Utah.

Oct. 26, 1982.

Pete N. Vlahos, Ogden, for plaintiff.

Larry R. White, David L. Wilkinson, Atty. Gen., Frank V. Nelson, Asst. Atty. Gen., Salt Lake City, for defendants.

OAKS, Justice:

The plaintiff broke his right hip on February 15, 1979, when he fell in the shower at Cottonwood Hospital, where he worked as a laboratory technician. In this proceeding, he seeks an award against the Second Injury Fund for a permanent partial disability. The controversy stems from the fact that plaintiff lost his right leg above the knee in a 1944 railroad accident in Arkansas, for which he was rated and compensated. The issue is whether an injured employee can recover against the Second Injury Fund for a pre-existing condition attributable to an industrial injury for which he has already been compensated under the laws of another state. We must also clarify

the procedures by which Second Injury Fund liability should be adjudicated.

The administrative law judge and the Industrial Commission found that the plaintiff had a "95% loss of the right lower extremity at the hip," with 5% being attributable to the aggravation of the fall at his job, and 90% being attributable "to conditions existing prior to [that fall], whether due to accidental injury, disease, or congenital causes ...."[1] The administrative law judge ordered the Second Injury Fund to pay the plaintiff "permanent partial disability compensation at the rate of $113.97 for 168.3 weeks for a total of $19,181.15 for a 90% pre-existing permanent partial disability."[2]

In its motion for the Commission to review the administrative law judge's order, the Second Injury Fund pointed out (1) that the potential liability of the Fund had not been raised by either party and the Fund neither received notice of nor participated in the proceedings before the administrative judge, and (2) that the award amounted to double compensation to the plaintiff since he had already been compensated for the loss of his leg in the Arkansas industrial accident. The Commission ordered that the $19,181.15 award against the Fund be stricken because the pre-existing permanent partial impairment had already been compensated. By this petition for review, the plaintiff seeks to have the award reinstated.

■ The Commission was correct in concluding that the Second Injury Fund should not be required to compensate the plaintiff for permanent impairment caused by any injury for which he had already been compensated. *David v. Industrial Commission,* Utah, 649 P.2d 82 (1982). Consequently, to the extent that the 90% pre-existing condition was attributable to the 1944 railroad accident, for which the plaintiff was rated

and compensated in Arkansas, he cannot recover additional compensation from the Second Injury Fund. (The record contains no information on plaintiff's rating or the amount of compensation he received from the 1944 injury.)

However, we do not affirm the Commission's order striking the plaintiff's entire award on the basis of double compensation, because there is no evidentiary support for that action. The record contains no basis for an inference that the plaintiff's pre-existing condition was entirely attributable to his 1944 injury. In fact, the record suggests that the disability attributed to the loss of plaintiff's leg was augmented by a subsequent degenerative condition, for which the Second Injury Fund might be liable. Thus, the administrative judge adopted the medical panel's finding that the employer's 5% share was "given for aggravation of pre-existing degenerative arthritis, etc., involving the hip," and the Commission did not differ with that finding.

Since the Second Injury Fund took no part in the proceedings before the administrative law judge, no party to those proceedings had any interest in developing the constituent elements of the 90% pre-existing condition. The resulting deficiency in the record can only be corrected by setting aside the Commission's order and remanding the case for redetermination of the extent to which, if any, the 90% pre-existing condition is attributable to any "accidental injury, disease or congenital causes," U.C.A., 1953, § 35–1–69(1), other than the industrial injury already compensated.

The plaintiff argues that the Commission should not have stricken his award because the Second Injury Fund did not pursue its motion for review within the 15 days allowed in the statute. U.C.A., 1953, § 35–1–82.55. The Fund answers that it received

---

1. Some of the findings and conclusions relate these figures to "permanent partial disability" as if referring to the whole man rather than to the right lower extremity. If this discrepancy represents an unresolved issue in relation to the proper amount of compensation, it can be settled on remand.

2. Cottonwood Hospital, having paid the employer's portion of the award, is not a party to the present proceeding.

no notice of the administrative judge's order until after the 15 days had expired, and that it filed its motion for review on the day after it was notified. The plaintiff responds that the Industrial Commission had timely notice of the order, and that the Fund is "nothing but a closely related arm of the Industrial Commission." We agree that the Commission was correct in striking the award against the Fund in the circumstances of this case (subject to the need for remand, explained above). But the ambiguity and confusion over the adequacy of notice to the Second Injury Fund in this controversy prompts us to elaborate on the status of the Fund and the procedures to be used in ordering disbursements from it.

The Second Injury Fund was created so that employees who have suffered some degree of permanent incapacity from the combination of a pre-existing condition and a subsequent industrial injury covered by the Act can obtain compensation for their combined injuries. We have said that the Fund's purposes are to encourage employers to hire handicapped workers and to broaden the base of responsibility for pre-existing conditions. *McPhie v. United States Steel Corp.*, Utah, 551 P.2d 504, 505 (1976). The current employer is only responsible for "the percentage of permanent physical impairment attributable to the industrial injury," and the Second Injury Fund is responsible for "the remainder," which the statute refers to as "the percentage of permanent physical impairment attributable to the previously existing condition or conditions, whether due to accidental injury, disease or congenital causes." § 35-1-69.[3] *See generally, McPhie v. Industrial Commission,* Utah, 567 P.2d 153, 155 (1977).

The law creating the Second Injury Fund provides that the state treasurer shall be its custodian, "the commission shall direct its distribution," and a member of the attorney general's staff "shall ... represent the second injury fund in all proceedings brought to enforce claims against it." U.C.A., 1953, § 35-1-68(1). The latter provision establishes the legislature's intent that the Second Injury Fund have the capacity to defend itself against claims. Pursuant to that intent, we have consistently treated the Second Injury Fund as a separate entity for purposes of its defense of and liability for claims pursuant to §§ 35-1-68 and 35-1-69, the statutes creating it. *E.g., Northwest Carriers, Inc. v. Industrial Commission,* Utah, 639 P.2d 138, 139 (1981).

To implement the legislative intent as we have interpreted and applied it, the Second Injury Fund needs to have independent administrative direction within the Industrial Commission from some official not responsible for the adjudicative functions of the commission that "direct its distribution." That official should receive notices affecting the Fund and make decisions about challenging adjudications adverse to it.[4] We think that is the minimum necessary to implement the legislative intent given effect in our review of Commission decisions affecting the Second Injury Fund.

The circumstances that alert the parties and the administrative law judge to a potential payment from the Second Injury Fund are, of course, exceptional, and sometimes will not appear until the proceedings are underway. It is therefore inexpedient to require the Fund to be a participant or even a party in every proceeding before the Commission, and the statutes do not require this. But once the prospect of Second Injury Fund liability appears, the Fund is surely an "interested party" or a "party in interest" under the statutes. It is therefore

---

**3.** The rule against recovering for injuries already compensated, *David v. Industrial Commission, supra,* which has now been embodied in the statute as to compensation paid under Utah legislation, 1981 Utah Laws, ch. 287, § 4, codified in § 35-1-69, is an exception to the Fund's normal liability for "the remainder."

**4.** In the case of the State Insurance Fund, a trust fund belonging to the participating employers, *Gronning v. Smart,* Utah, 561 P.2d 690 (1977); *Chez v. Industrial Commission,* 90 Utah 447, 62 P.2d 549 (1936), the legislature has deliberately separated the adjudicative function and the management function by its direction that this fund shall be managed by the executive director of the state department of administrative services. § 63-1-6.

entitled to receive, in its own right and through its own authorized representative (rather than through the Industrial Commission generally), a notice of the hearing, § 35–1–82.51, and a copy of the administrative law judge's findings, § 35–1–82.52. It must also receive notice of the entry of the Commission's order, § 35–1–82.56, and it is entitled to file a motion for review with the Commission, § 35–1–82.53.[5]

Even where notified, the Second Injury Fund may choose not to participate in the hearing before the administrative judge. In some cases in which the Fund has prospective liability, its interests may be adequately safeguarded by other parties and its presence and participation need not be required. But there may be cases where the Fund has elected not to participate and its presence has not been directed but where the administrative judge has entered an order against the Fund. In that event, the Fund should be allowed to reopen the case, upon motion for review to the administrative judge under § 35–1–82.53, in order to submit further evidence bearing on the special interest and liability of the Fund. That is what the Fund should be allowed to do on the remand in this case.

■ As we interpret the statutory purpose and procedure, the Second Injury Fund need not be a party to every workmen's compensation proceeding that may ultimately affect its interests. But there is a procedure by which the parties should notify the Fund as its potential interests become apparent, and whereby the Fund can, where necessary, compel the reopening of the hearing to allow the Fund to submit evidence bearing upon its special interest and liability.

The Commission's order striking the entire award in favor of the plaintiff is set aside, and the case is remanded to the Commission for further proceedings consistent with this opinion. No costs awarded.

HALL, C.J., and STEWART, HOWE and DURHAM, JJ., concur.

5. If an order is entered against the Fund, it would also seem to be an "insurance carrier"

for this purpose, and thereby entitled to receive a copy of the medical panel report. § 35–1–77.