657 P.2d 764 (1983)
UNITED STATES FIDELITY & GUARANTY COMPANY (Carrier for Radio Service Corporation of Utah), Plaintiff,
v.
The INDUSTRIAL COMMISSION OF UTAH, Cloyde W. Anderton, Bonneville International (KSL), Fireman's Fund and The Second Injury Fund, Defendants.
No. 17821.
Supreme Court of Utah.
January 7, 1983.
*765 Ford G. Scalley, Salt Lake City, for plaintiff.
David L. Wilkinson, Atty. Gen., Frank V. Nelson, Asst. Atty. Gen., Stuart L. Poelman, Salt Lake City, Robert W. Barker, Washington, D.C., Gordon Burt Affleck, Lewis H. Callister, Salt Lake City, for defendants.
HALL, Chief Justice:
Plaintiff United States Fidelity & Guaranty Company (U.S.F. & G.) seeks this review of an order of the Industrial Commission of Utah (Commission) which apportioned medical expenses between two insurance carriers and denied any contribution from the Second Injury Fund.
Cloyde W. Anderton (Anderton) sustained cervical neck injuries as the result of four separate industrial accidents which occurred in November, 1962, May and October, 1973, and July, 1975. At the time of the 1962 injury, Anderton was employed by Radio Service Corporation of Utah, which subsequently merged with Bonneville International (KSL), by whom Anderton was employed at the time all of the further injuries were sustained. U.S.F. & G. was the insurance carrier for Radio Service Corporation of Utah, while Fireman's Fund was the insurance carrier for KSL.
Fireman's Fund paid Anderton's medical expenses from and after his May, 1973 injury and until October 5, 1979, when it declined to assume further liability, asserting that Anderton's physical condition was attributable to conditions that existed prior to the May, 1973 injury. This prompted Anderton to seek a determination of the issue by the Commission.
The matter was heard by an administrative law judge designated by the Commission. U.S.F. & G. took the position that apportionment of medical expenses between carriers was not within the contemplation of the Utah Workmen's Compensation Act, and that the current insurance carrier, Fireman's Fund, and/or the Second Injury Fund were liable for payment. Fireman's Fund urged the necessity of a referral to a medical panel for a determination of the percentage of Anderton's injuries that were attributable to each of the various accidents.
The administrative law judge declined to submit the matter to a medical panel and entered an order apportioning all past, present and future medical expenses incurred since the 1973 injuries, two-thirds to U.S.F. & G. and one-third to Fireman's Fund, and relieving the Second Injury Fund of liability. His order appears to have been based upon the report of Anderton's treating physician, which concludes that the 1973 injuries contributed an additional five percent to Anderton's already existing ten percent partial disability, which was occasioned by the 1962 injury.
*766 The Commission denied U.S.F. & G.'s motion for review and affirmed the order of the administrative law judge, whereupon the matter was brought to this Court by a writ of review.
U.S.F. & G. first contends that the Commission exceeded its authority in apportioning medical expenses between insurance carriers and cites Duaine Brown Chevrolet Co. v. Industrial Commission[1] and Mountain States Steel Company v. Industrial Commission,[2] both of which support the proposition that in the absence of statutory authority, liability for payment of compensation cannot be apportioned among insurance carriers in multiple-accident cases. However, Brown and Mountain States must be read in light of the case of Kennecott Copper Corporation v. Bilanzich,[3] which draws a distinction between compensation which is paid for an injury and medical and hospital expenses which are paid for treatment of the injury. Once a compensable injury occurs, there is no limitation as to the time during which medicals must continue to be furnished.[4] Since the obligation of the employer to pay ongoing medical expenses may continue indefinitely, a subsequent aggravating injury does not relieve the initial employer of the obligation to bear the medical expenses which remain attributable to the prior injury. Stated another way, an award of medical expenses for treatment of an injury is not extinguished by an award of medical expenses attributable to a subsequent injury.
In the instant case, it is thus to be seen that the Commission's order which required U.S.F. & G. to continue the payment of medicals attributable to Anderton's first injury does not constitute a prohibited apportionment of compensation. However, the Commission's determination that U.S.F. & G. should bear two-thirds of the cost of all future medicals bears further analysis.
U.S.F. & G. asserts error on the part of the Commission in failing to submit this matter to an appropriate medical panel, as provided by U.C.A., 1953, § 35-1-69, the pertinent language of which reads as follows:
A medical panel having the qualifications of the medical panel set forth in section 35-2-56, shall review all medical aspects of the case and determine first, the total permanent physical impairment resulting from all causes and conditions including the industrial injury; second, the percentage of permanent physical impairment attributable to the industrial injury; and third, the percentage of permanent physical impairment attributable to previously existing conditions whether due to accidental injury, disease or congenital causes.
The foregoing statute is explicit in its requirement that the Commission shall appoint a medical panel to "review all medical aspects of the case," and to determine the percentage of impairment attributable to the various accidents. In this case, the Commission, without the assistance of a medical panel, determined that the total percentage of partial impairment was fifteen percent, ten percent from the prior 1962 injury and five percent from the combined subsequent injury. The ten percent disability measurement, representing the pre-existing condition, was correctly utilized by the Commission because it had been determined by a medical panel in a prior proceeding regarding the establishment of liability for the initial 1962 injury. However, the five percent determination representing the effects of the subsequent injury was made by a lone doctor (Dr. Hebertson), and therefore did not satisfy the requirement of a "medical panel" determination.[5] *767 It is therefore necessary to remand this case to the Commission for the purpose of submitting this issue to an appropriate medical panel. The medical panel shall then review the medical aspects of this case and determine the percentage of impairment resulting from the subsequent injury. After having been apprised of the determinations of the medical panel, the Commission shall then assign liability for the payment of present and future medicals.
U.S.F. & G. next contends that the Commission erred by refusing to apportion liability to the Second Injury Fund in accordance with U.C.A., 1953, § 35-1-69. Fireman's Fund joins in this contention and urges the Court to utilize the Fund in satisfaction of the two-thirds liability deemed by the Commission to be attributable to the pre-existing condition.
Explicit statutory authority exists to apportion compensation awards and medical costs between employers and the Second Injury Fund, provided pertinent conditions are met. Basically, those conditions are three in number: 1) permanent incapacity occasioned by accidental injury, disease or congenital causes, followed by 2) subsequent injury resulting in further permanent incapacity which is 3) substantially greater than that which would have been incurred had there been no pre-existing incapacity.[6] Those conditions having been met, the liability of the employer is assessed "on the basis of the percentage of permanent physical impairment attributable *768 to the industrial injury only and the remainder shall be payable out of the said special [second injury] fund."[7]
The Commission determined that the Second Injury Fund is liable only when multiple employers are involved, and not where the employment is continuous for a single employer. The Commission also opined that the language of the statute,[8] "previously incurred permanent incapacity by accidental injury," limits its application to circumstances where the prior injury was nonindustrial. We do not subscribe to the reasoning of the Commission.
It is first to be observed that the statute neither expressly nor impliedly limits its application to multiple-employer circumstances. Furthermore, encouragement of an employer to retain an injured or disabled employee after an injury without the risk of further liability for payment of compensation and medical expenses should a subsequent injury occur, seems wholly consistent with the recognized statutory purpose which is to encourage employers to hire disabled persons.[9] Finally, neither the language of the statute nor any previous declaration of this Court lends support to the Commission's decision to limit access to the Second Injury Fund to cases where the previous incapacitating injury was nonindustrial. Therefore, upon remand, the Commission is statutorily obligated to determine whether the subsequent injuries sustained by Anderton have resulted in further permanent incapacity "which is substantially greater than he would have incurred if he had not had the pre-existing incapacity." If such is found to be the case, the Commission must "then assess the liability for compensation and medical care to the employer on the basis of the percentage of permanent physical impairment attributable to the industrial injury only and the remainder shall be payable out of the said special fund."
U.S.F. & G.'s remaining contention is that because it has already paid medical expenses attributable to the 1962 injury in excess of the sum of $1,283.38, it has no further obligation for payment pursuant to the provisions of U.C.A., 1953, § 35-1-81. In 1962, the statute read in pertinent part as follows:
In addition to the compensation provided for in this title the employer or insurance carrier ... shall in ordinary cases also be required to pay such a reasonable sum for medical, nurse and hospital services, and for medicines, and for such artificial means and appliances as may be necessary to treat the patient as in the judgment of the industrial commission may be just, not exceeding the sum of $1,283.38, provided that if upon application to and investigation by the industrial commission it shall find that in particular cases such an amount is insufficient, it shall determine and fix such a reasonable amount as under all the circumstances may be fair and just.
Although this statute has since been modified by legislative amendment,[10] it must be applied in this case in accordance with its provisions as they stood at the time the 1962 injury occurred.[11] Accordingly, under the narrower 1962 reading of the statute, the Commission should not have imposed an obligation for medical expenses beyond the $1,283.38 limit, unless upon application to and investigation by the Commission it was determined that the amount of the award was insufficient. If such were the case, the Commission could properly have awarded the applicant an additional amount, provided it was a "reasonable amount" and under the circumstances it was "fair and just."
This Court illustrated the appropriate application of U.C.A., 1953, § 35-1-81, as it read in 1962 prior to amendment, in the case of Utah Construction Co. v. Matheson.[12] In that case, the Commission ordered the employer to pay certain medical expenses incurred some 12 years after the original accident. The employer pointed out that it had already paid a total of $37,399.09 in compensation and medical expenses, in spite of the fact that it had no obligation to pay medical expenses beyond the statutory limit ($1,283.38), until the Commission "conducted an investigation and fixed an appropriate higher and definite limit."[13] The employer further argued that an order to pay medical expenses should not be a "blank check" to the injured, by which he could continue indefinitely, without supervision and restraint, collecting for any and all medical services.
The Court expressed agreement with the employer's position as to the statute and stated:
The statute reflects an effort to reach some fair and reasonable balancing between the two interests: on the one hand, affording fair and reasonable coverage to the injured employee; and the other, the fairness and practicality of imposing extensive, sometimes uncertain, and long continuing burdens on employers.
534 P.2d at 1239.
The Court summarized the process for accomplishing the statutory objective as follows:
It will be noted that in order to serve the objective just stated this statute leaves neither party at the mercy of the other. It places the definite limitation of $1,283.38 as the maximum award for any "ordinary" case which in any usual case should be given effect and adhered to. But for the unusual case, such as the *769 instant one appears to be, there is the further provision of the statute which vests the commission with continuing supervision and control, which can be invoked as either party may find it necessary, to make determinations as to the causal relationship, necessity, reasonableness and justice of any such extended award. But such supplemental procedure must be grounded upon compliance with the statute that "upon application to and investigation by the industrial commission it shall find that in particular cases such an amount is insufficient . .." then the commission "shall determine and fix such a reasonable amount as under all the circumstances may be fair and just."
534 P.2d at 1239-40.
The Court's final disposition of Matheson was to sustain the award of present and immediate medical needs, but as to future expenses, such were to remain subject to the supervision and control of the Commission and could be awarded only upon compliance with the provisions of § 35-1-81, as interpreted. The Court's reasoning and decision in Matheson, concerning the issue of liability for continuing medical expenses, are dispositive in the present case.
In the present case, application was made to the Commission to determine the continuing obligation of the insurers (Firemen's Fund and U.S.F. & G.). It is an undisputed fact that U.S.F. & G. has abided by its obligation for the 1962 injuries, and in fact, paid in excess of the $1,283.38 statutory limit. The only determination that need now be made is whether U.S.F. & G.'s payments to date are actually "insufficient" to cover the necessary medical costs for that injury. If they are found to be insufficient, the Commission shall then determine and fix such amount of compensation as under all the circumstances may be fair and just.
In accordance with this Court's reasoning in Matheson, on remand, the Commission, with the assistance of a medical panel, shall determine whether a sufficient causal relationship exists between the 1962 injury and the medical expenses incurred after the 1973 injuries. If such a relationship is found to exist, liability to the plaintiff should only include its proportionate share (as determined by a medical panel, supra) of the past and present expenses incurred since the 1973 injuries. An openended award of future expenses is improper. Future expenses should only be awarded as they arise and upon proper application to and investigation by the Commission pursuant to §§ 35-1-81 and 35-1-78.
This case is remanded for further proceedings consistent with this opinion.
STEWART, OAKS, HOWE and DURHAM, JJ., concur.
NOTES
[1] 29 Utah 2d 478, 511 P.2d 743 (1973).
[2] Utah, 535 P.2d 1249 (1975).
[3] Utah, 597 P.2d 875 (1979).
[4] Id.
[5] U.C.A., 1953, § 35-2-56 reads in pertinent part as follows:

(2) ... Where a claim for compensation based upon partial permanent disability due to an occupational disease is filed with the commission, the commission shall appoint an impartial medical panel to consist of not less than three physicians specializing in the treatment of the disease or condition involved in the claim, and such medical panel shall make such study, take such X-rays and perform such tests as the panel may determine and certify to the commission the extent, if any, of the permanent disability of the claimant from performing work for remuneration or profit, and whether the sole cause of such partial permanent disability, in the opinion of the panel, results from the occupational disease and whether any other cause or causes have aggravated, prolonged, accelerated or in anywise contributed to the disability, and if so, the extent (in percentage) to which such other cause or causes has so contributed to the disability. The report of the panel shall be made to the commission in writing... .
[6] U.C.A., 1953, § 35-1-69(1).
[7] Id.
[8] Id.
[9] David v. Industrial Commission, Utah, 649 P.2d 82 (1982).
[10] Ch. 76, § 9, S.L.U. 1971 deleted the definite limitation as to dollar amount, as well as the words "shall determine and fix such a reasonable amount." The Commission may thus require payment of "such reasonable sums as may be necessary ... and ... just... ."
[11] Utah Construction Co. v. Matheson, Utah, 534 P.2d 1238 (1975).
[12] Id.
[13] Id. at 1239.