**KAISER STEEL
CORPORATION, Plaintiff,**

v.

**The INDUSTRIAL COMMISSION OF the STATE OF UTAH, Louis L. Chavez, and The Second Injury Fund of the State of Utah, Defendants.**

**Louis L. CHAVEZ, Plaintiff,**

v.

**The INDUSTRIAL COMMISSION OF the STATE OF UTAH, Kaiser Steel Corporation (Employer), and the Second Injury Fund of the State of Utah, Defendants.**

Nos. 18703, 18704.

Supreme Court of Utah.

Nov. 14, 1985.

Edwin C. Barnes, Salt Lake City, for plaintiffs.

David L. Wilkinson, Atty. Gen., Timothy C. Allen, Jane L. Moffit, Virginius Dabney, Salt Lake City, for defendants.

HOWE, Justice:

In case No. 18704, plaintiff Louis L. Chavez seeks reversal of a decision of the Industrial Commission that denied him permanent partial impairment benefits from the Second Injury Fund. His employer, Kaiser Steel Corp., in case No. 18703 joins Chavez in seeking a reversal of the denial of those benefits and, in addition, seeks reimbursement from the Second Injury Fund for a portion of the benefits it paid Chavez.

In 1977, while employed as a miner by Kaiser Steel Corp., Chavez injured his right knee when the empty mining car he was riding struck another empty car. He continued working the day of the injury and did not report the event until seven months later when his knee began to stiffen. He saw the company doctor who sent him to a specialist. The specialist performed a meniscectomy in August 1978, and Chavez went back to work. After undergoing a second operation to alleviate the pain which continued in his knee, he did not return to the job. He later underwent a third surgery but still suffers from degenerative arthritis of his knee. In 1946, Chavez had suffered a multiple rib fracture while working in the mines. The healing of the fracture resulted in a reduced functional capacity of his right lung.

The administrative law judge for the Commission appointed a special medical panel to determine the medical issues. The panel was of the opinion that a degenerative arthritic disease preexisted the 1977 accident and was the major cause of Chavez's knee problems. Using a "Combined Values Chart," the panel found Chavez was thirty-three percent impaired before the accident due to his arthritis and pulmonary condition. The contribution of the 1977 accident was found to be five percent of the lower extremity or two percent of the whole man.

The administrative law judge found that the two percent impairment was "minimal or 'token'" and concluded that the 1977 incident did not result in a permanent partial incapacity greater than that previously existing. Consequently, he ruled that the Second Injury Fund had no liability. Since Kaiser had paid for Chavez's temporary total disability and had made advance payments for his permanent partial disability, the administrative law judge also ruled that Chavez had been overcompensated and was not entitled to further benefits. (Because of the arthritis, Chavez receives social security disability; and, because of the pulmonary condition, he receives black lung benefits.) The Commission affirmed the administrative law judge.

I.

Chavez argues that the Commission erred in refusing to raise the panel's determination of the percentage of his pulmonary impairment which existed prior to his 1977 industrial injury. He claims the error is apparent since the chairman of the medical panel admitted on cross-examination that American Medical Association (AMA) guides suggested a possible greater impairment than that found by the panel.

While disability claims are liberally construed in favor of awarding benefits, *Prows v. Industrial Commission,* Utah, 610 P.2d 1362 (1980), we do not overturn the Commission's findings on appeal unless they are arbitrary or capricious, wholly without cause, contrary to the one inevitable conclusion from the evidence, or without any substantial evidence to support them. *Kincheloe v. Coca-cola Bottling Co. of Ogden,* Utah, 656 P.2d 440 (1982); *Kaiser Steel Corp. v. Monfredi,* Utah, 631 P.2d 888 (1981).

The chairman of the panel explained that the difference between the panel's de-

termination of Chavez's impairment and the AMA's guides were due to the age of the guides and to the recognition that they are based on more disabling, progressive congestive diseases (such as emphysema) than Chavez's non-progressive restricted lung capacity. On redirect examination, the chairman stood firmly by the medical panel's findings. Further, Chavez offered no evidence to contradict the chairman's testimony. Based on this record, we cannot say that the Commission's findings on Chavez's preexisting pulmonary impairment were arbitrary or capricious. They were neither wholly without cause nor contrary to the one inevitable conclusion from the evidence. Rather, substantial evidence supports them. We therefore find no error on this point.

## II.

Both Chavez and Kaiser maintain that the Commission erred in failing to find the Second Injury Fund liable. Workmen's compensation must be paid by the Fund under U.C.A., 1953, § 35–1–69(1) when an employee with a previous permanent incapacity sustains an industrial injury "that results in permanent incapacity which is *substantially greater than he would have incurred had he not had the pre-existing incapacity.*" (Emphasis added.)

In denying Chavez compensation from the Second Injury Fund for his permanent partial impairment predating the 1977 accident, the administrative law judge and the Industrial Commission focused on whether the 1977 injury substantially increased his total impairment. Indeed, the basis of the Industrial Commission's affirming the administrative law judge's denial of compensation was that "the 2% disability assigned by the Medical Panel to the industrial accident does not represent a 'substantially greater' impairment than that which preexisted the industrial accident." A dissenting commissioner wrote that he was "of the opinion that the 2% disability assessed to the industrial accident represents a definite and measurable increase in the disability of the Applicant and that the Second Injury

Fund benefits should be awarded for the preexisting portion." In their arguments on appeal, counsel for all parties have concentrated on whether the two percent increase in disability caused by the 1977 accident was "substantially greater" than the preexisting impairment.

■ The decisions of the administrative law judge and the Industrial Commission and the arguments of counsel misperceive the meaning of section 35–1–69. Second Injury Fund liability is imposed, not when the second injury itself causes a "substantially greater" incapacity, but when the worker's total incapacity following the second injury is "substantially greater" than it would have been but for the preexisting incapacity. Thus, our attention should be directed to the contribution made by the preexisting incapacity. If the preexisting incapacity made the total resulting incapacity substantially greater, then the Second Injury Fund is liable. However, if the preexisting incapacity was minimal, it could not fairly be termed to have "substantially increased" the total incapacity that the worker now suffers.

This construction is entirely consistent with decisions of this Court involving the Second Injury Fund. In *Intermountain Health Care v. Ortega*, Utah, 562 P.2d 617 (1977), Mrs. Ortega sustained a twenty percent permanent partial disability when she strained her back lifting laundry bags in the plaintiff's hospital. A panel also found that she had an additional ten percent impairment attributable to a preexisting psychological condition relating to pain in her back. In holding that the Second Injury Fund was liable for the ten percent, this Court said:

The requirement that the pre-existing condition combines with the later injury to cause a "substantially greater" permanent incapacity does not mean that the former must be greater than the latter. It simply means that it be some definite and measurable portion of the causation of the disability. It surely cannot be doubted that 30% is substantially greater than 20%, nor that 10% disability is itself

substantial in that it is definite and measurable. Consequently, inasmuch as it appears that the pre-existing condition increased the resulting disability by one third [sic], it follows that under the requirements of the statute, the medical expenses as well as the compensation award should have been apportioned two thirds from the employer and one third from the [Second Injury] fund.

In *Northwest Carriers v. Industrial Commission*, Utah, 639 P.2d 138 (1981), the employee Camp suffered a sixty-five percent loss of bodily function in a fall from scaffolding. In addition, he had a three percent loss attributable to psychiatric complications from conditions predating the accident. We held the Second Injury Fund responsible for 3/68 of Camp's benefits. In *Paoli v. Cottonwood Hospital*, Utah, 656 P.2d 420 (1982), and *McPhie v. United States Steel*, Utah, 551 P.2d 504 (1976), we had the opposite situation. The prior permanent impairment greatly exceeded the impairment attributable to the second accident. In all of these cases, it was either discussed or it was implicit in the decision that the preexisting incapacity, when combined with the incapacity from the second injury, made the total incapacity "substantially greater" than it would have been without the prior incapacity. None of our cases have required or even suggested that the incapacity inflicted by the second injury had to be "substantially greater" than the preexisting impairment. The statute does not contain that requirement.[1] All that is required is that the second injury be one for which compensation and medical care is provided by our statutes.

█ Since Chavez's pre–1977 incapacity was thirty-three percent, it clearly made his total incapacity following the 1977 accident "substantially greater." The case is remanded to the Industrial Commission to make an award of permanent partial bene-

fits from the Second Injury Fund to Chavez on account of his preexisting impairment, less any portion for which he may have been already compensated, *Paoli v. Cottonwood Hospital, supra,* and to order the Second Injury Fund to reimburse Kaiser for its proportionate share of benefits already paid Chavez by Kaiser. No costs on appeal are awarded.

STEWART and DURHAM, J., concur.

HALL, Chief Justice (dissenting):

I do not join the main opinion because it sanctions the payment of compensation for preexisting incapacities by indulging in a theory of second injury fund liability not within the contemplation of U.C.A., 1953, § 35–1–69. It does so by simply combining the percentage of preexisting incapacity (33%) with the percentage of incapacity attributable to the current industrial injury (2%), and drawing the conclusion that since Chavez's *total incapacity* has increased, the "substantially greater" language of section 35–1–69 is met. I disagree.

Section 35–1–69, as it provided at the time of the accident, stated in pertinent part:

> If any employee who has previously incurred a permanent incapacity ... sustains an industrial injury ... that results in permanent incapacity which is substantially greater than he would have incurred if he had not had the pre-existing incapacity, compensation ... shall be awarded on the basis of the combined injuries, but the liability of the employer ... shall be for the industrial injury only and the remainder shall be paid out of the special fund....

It is thus to be seen that second injury fund liability is not premised simply upon whether one's total incapacity is increased by the industrial injury. Rather, it is prem-

---

1. In 1981, section 35–1–69 was amended to require that the percentage of permanent physical impairment attributable to the second injury be ten percent or greater. However, the rights and liabilities of the parties are determined on the basis of the law as it existed at the time of the occurrence, which in the instant case was 1977. *Utah Construction Co. v. Matheson*, Utah, 534 P.2d 1238 (1975); *Okland Construction Co. v. Industrial Commission*, Utah, 520 P.2d 208 (1974).

ised upon whether the incapacity which stems from the industrial injury is in and of itself substantially greater than it would have been had there been no preexisting incapacity. This Court has consistently so held.[1]

Section 35-1-69(1) makes no provision for the payment of compensation for preexisting incapacities, per se.

An award of compensation for preexisting incapacities is only to be made to the extent that said incapacities *combine with and thereby enhance* the incapacity *attributable to the industrial injury.* In that event, the employer has liability for the industrial injury only, the *remainder* to be paid out of the special fund.[2]

The legislature's use of the term "remainder" is of particular significance. In the context of section 35-1-69(1), the term "remainder" refers to that portion of the incapacity *attributable to the industrial injury* that is *substantially greater* than it would have been *in the absence of any preexisting incapacities.* If the theory of second injury fund liability advanced in the main opinion is to be followed, the term "remainder" must necessarily be equated with "preexisting incapacities." The result is a strained and unwarranted interpretation of the statutory language. Had the legislature intended that payment of compensation for preexisting incapacities be triggered simply by the occurrence of an industrial injury, certainly it would have set forth that language in the statute rather than the "remainder" language which is inconsistent therewith.

The acknowledged purpose of the Worker's Compensation Act[3] is to compensate for the incapacities attributable to *industrial* injuries. However, it is not the purpose of the Act to provide a general health insurance plan covering and providing for compensation for any and all preexisting incapacities an employee may suffer from, and this Court has never so indicated.

The main opinion cites *Ortega, Northwest Carriers, Paoli,* and *McPhie* as supportive, by implication, of its conclusion. However, neither these cases, nor any others, reach that conclusion. Instead, the cases follow the explicit language of the statute and award compensation for preexisting incapacities only to the extent that the preexisting incapacities combine with and enhance the incapacity attributable to the industrial injury. The *Ortega* case is a classic example of the Court's prior reasoning.

In *Ortega,* the worker, Ortega, strained her back while lifting laundry bags. Due to the pain in her back, *accompanied by psychosomatic pain,* she was unable to continue work for a period of time. Based on a medical panel report, the Commission found that Ortega had a preexisting psychological condition relating to pain in her back which, *combined with the industrial injury,* resulted in a permanent partial disability of 30%, 10% of which was attributable to the preexisting condition and the other 20% to the industrial injury. Nevertheless, the Commission denied second injury fund compensation. In reversing the Commission on that point, the Court said:

> The major difficulty in this case stems from the fact that the Commission found that the claimant had a pre-existing psychological condition *relating to pain in her back,* which *combined with this accident resulted in permanent partial disability* of 30 per cent, 10 per cent attributable to the pre-existing condition and the other 20 per cent to this accident. The claimant's testimony and the medical

1. *See Day's Market, Inc. v. Muir,* Utah, 669 P.2d 440 (1983); *United States Fidelity & Guar. Co. v. Industrial Comm'n,* Utah, 657 P.2d 764 (1983); *Kincheloe v. Coca-Cola Bottling Co.,* Utah, 656 P.2d 440 (1982); *Paoli v. Cottonwood Hosp.,* Utah, 656 P.2d 420 (1982); *Northwest Carriers v. Industrial Comm'n,* Utah, 639 P.2d 138 (1981); *Intermountain Smelting Corp. v. Capitano,* Utah, 610 P.2d 334 (1980); *Intermountain Health Care, Inc. v. Ortega,* Utah, 562 P.2d 617 (1977); *McPhie v. United States Steel Corp.,* Utah, 551 P.2d 504 (1976); *Hafer's, Inc. v. Industrial Comm'n,* Utah, 526 P.2d 1188 (1974).

2. *See* note 1 and cases cited therein.

3. U.C.A., 1953, §§ 35-1-1 to -107.

report provide support for that finding; and, since the latter also indicates that *continued psychiatric treatment may lead to further significant improvement in the claimant's condition,* the Commission reserved its final determination of the plaintiff's liability for total disability benefits until the treatment is completed.

. . . .

The *requirement that the pre-existing condition combines with the later injury to cause a "substantially greater" permanent incapacity* does not mean that the former must be greater than the latter. It simply means that it be some definite and measurable portion of the causation of the disability. It surely cannot be doubted that 30 per cent is substantially greater than 20 per cent, nor that 10 per cent disability is itself substantial in that it is definite and measurable. Consequently, *inasmuch as it appears that the pre-existing condition increased the resulting disability by one third,* it follows that under the requirements of the statute, the medical expenses as well as the compensation award should have been apportioned two thirds from the employer and one third from the special fund.

. . . .

We observe that compensation is not necessarily awardable simply because it is desirable or advisable for her to continue psychiatric therapy, *but it is properly awardable only during actual inability to work which is found to have been caused by and is properly attributable to the industrial accident.* Under the circumstances here shown the Commission was justified in ordering that temporary total disability compensation continue during the time she is disabled and until she is released for work by her doctor.

We are not insensitive to plaintiff's apprehensions about what it terms a "blank check" award. There is no doubt

but that such an uncertain situation as the Commission has found to exist here should be dealt with in the most satisfactory manner that can be achieved by making the award as definite as is reasonably possible. The objective should be to reach some equitable and reasonable balancing between *affording fair and proper coverage for an employee who suffers injury and has bonafide residual disability,* as compared to the imposing of uncertain, and sometimes extensive and long continuing burdens upon the employer.[4]

(Emphasis added.)

The Court followed the same reasoning in *Northwest Carriers.* In that case, the Commission concluded that the worker, Merz, sustained a substantial whole-man physical impairment. The Commission also found that Merz was permanently disabled because his physical impairment and his advanced age and poor education made rehabilitation unlikely. Nevertheless, the Commission declined an award of compensation for incapacity attributable to the nonphysical unemployability factors. In reversing the order of the Commission, the Court said:

[W]e hold that ... the Second Injury Fund should bear the cost of disability payments to the extent that the 15% preexisting impairment, *acting in combination* with Merz's age, mental abilities and lack of rehabilitative prospects, *contributed to* his total disability. Thus a proper assessment of responsibility for non-physical factors should be determined by the *proportion* which *the preexisting physical impairment bears to the additional physical impairment resulting from the instant industrial accident....*[5]

(Emphasis added.)

The *Paoli* case does not significantly bear upon the case at hand because the issue presented in *Paoli* was whether the second injury fund was liable for the preexisting incapacity which had already been

---

**4.** 562 P.2d at 619–20 (footnote omitted).

**5.** 639 P.2d at 141–42.

compensated. The Court answered in the negative, but, since the record suggested that the incapacity attributable to the loss of Paoli's leg may have been augmented by a subsequent degenerative condition which might bear upon the extent of the incapacity attributable to the current industrial injury, the case was remanded for further proceedings.

In *McPhie,* the worker, McPhie, struck his head on the window frame of a locomotive he was operating. The resultant injury necessitated a spinal fusion following which he returned to his duties. Subsequently, a second industrial accident resulted in further injuries which necessitated a spinal cervical fusion. Application was made for benefits. The medical panel concluded that McPhie had suffered a 100% permanent impairment, and the Commission so found. The Commission further found that a 15% permanent partial loss of function was attributable to the current industrial injury, but declined to award second injury fund compensation. In reversing the Commission's order, the Court espoused the same reasoning followed in *Ortega* and *Northwest Carriers:*

> The Utah statute uses the language "any employee who has previously incurred a permanent incapacity by accidental injury, disease, or congenital causes, sustains an industrial injury for which compensation and medical care is provided by this title that results in permanent incapacity which is substantially greater than he would have incurred if he had not had the preexisting incapacity...." In this case the plaintiff was able to return to his regular employment *but thereafter became totally unable to work.* It is unrealistic to say that his resulting incapacity is not substantially greater.[6]

(Emphasis added.)

All of the remaining cases that bear upon the issue of second injury fund liability are of the same import.

In *Day's Market v. Muir,* the Court concluded that:

> The Fund's only application is where the ... incapacity [attributable to the industrial injury] "is substantially greater than [the employee] would have incurred if he had not had the pre-existing incapacity." This language *requires a finding as to the effect the pre-existing incapacity has upon the current incapacity.... [F]ull responsibility falls upon the current employer (or its insurer) unless it can be said that the current incapacity is substantially greater than it would have been "but for" the pre-existing incapacity.*[7]

(Emphasis added.)

In *Muir,* the Commission failed to fulfill its statutory obligation to determine whether the incapacity attributable to the industrial injury was substantially greater than it would have been in the absence of preexisting incapacity. The Court remanded for the purpose of determining *the effect* the pre-existing incapacity had upon the industrial injury.

In *United States Fidelity & Guaranty Co. v. Industrial Commission,* the Court firmly recited the basis for second injury fund liability as follows:

> *Explicit statutory authority exists* to apportion compensation awards and medical costs between employers and the Second Injury Fund, provided pertinent conditions are met. Basically, those conditions are three in number: 1) permanent incapacity occasioned by accidental injury, disease or congenital causes, followed by 2) subsequent injury *resulting in further permanent incapacity which is* 3) *substantially greater than that which would have been incurred had there been no pre-existing incapacity.* Those conditions having been met, the liability of the employer is assessed "on the basis of the percentage of permanent physical impairment attributable to the

---

6. 551 P.2d at 505.

7. 669 P.2d at 442 (footnote omitted).

industrial injury only and the remainder shall be payable out of the said special [second injury] fund." [8]

(Emphasis added.)

In *Kincheloe v. Coca-Cola Bottling Co.*, Kincheloe suffered a herniated disc while lifting a case of soda pop at his place of employment. The disc was surgically removed. Kincheloe had previously suffered an industrial injury to his back while employed in Nebraska. For the previous injury, he received a disability rating of 15% and was fully compensated therefor. In disallowing reimbursement from the second injury fund for the disc injury, the Commission found that the assessment of 15% permanent incapacity in the current medical evaluation was merely a restatement of the disability rating given in Nebraska.

In affirming the order of the Commission, the Court stated:

> Based on the evidence before him, it was reasonable for the law judge to conclude that plaintiff did not sustain *"permanent incapacity which* is substantially greater *than he would have incurred if he had not had the pre-existing incapacity"*; hence, the second injury fund has no application.[9]

(Emphasis added.)

The factual scenario of *Intermountain Smelting Corp. v. Capitano*, like that of *Ortega*, is classically demonstrative of an industrial injury which was substantially greater because of its enhancement by a preexisting incapacity. Capitano had been shot in his left leg while in the military service in Korea and was given a 30% disability rating for life. His subsequent industrial injury resulted in a 30% loss of use of his right foot. To compensate, he partially shifted his weight to his left foot, which adversely affected that foot. The Commission found, based upon a medical panel report, that the combined effects of both injuries amounted to a loss of bodily

function of 25%, 16½% of which was attributable to the preexisting incapacity and 8½% to the industrial injury. However, the Commission refused to order proportional contribution from the second injury fund because the preexisting injury was not causally connected to the industrial injury.

In reversing the Commission's decision, the Court recounted the provisions of section 35–1–69, cited its recent decision in *Ortega* and concluded that there was no requirement that a causal connection exist between the preexisting injury and the industrial injury. It was undisputed that the combined effects of both injuries caused the industrial injury to be substantially greater than it would have been had there been no prior incapacity. The Court awarded compensation accordingly.

In *Hafer's, Inc. v. Industrial Commission*, the Court expressly declined to compensate for a preexisting incapacity by simply adding it to the incapacity attributable to the industrial injury. In that case, the Commission awarded compensation for injuries sustained when a "spring-loaded" shock absorber slipped, causing a blow to the head of the worker. The Commission concluded that the blow to the head was the *sole cause* of the worker's disability and declined to compensate for a 25% preexisting incapacity. In affirming the order of the Commission, this Court held:

> The proposition plaintiff asserts is that there is medical evidence that the applicant had a prior disability which could fairly be rated at 25 per cent. The obstacles to the plaintiff's position are (1), that *the Commission expressly found that the injury complained of herein was the sole cause of Mr. Reid's disability for which this award was made;* and (2), that there is also a reasonable basis in the evidence to justify that finding.
>
> In accordance with what we have said herein, we are not persuaded that the Commission acted capriciously, arbitrari-

---

8.  657 P.2d at 767 (footnotes omitted).

9.  656 P.2d at 442 (footnotes omitted).

ly or unreasonably, or in excess of its authority.[10]

(Emphasis added.)

Each of the foregoing cases stands for the proposition that an award of compensation for preexisting incapacities is only to be made to the extent the said incapacities combine with and enhance the incapacity which results from the industrial injury. I have found no cases to the contrary. If the law should be different, the subject should be addressed by the legislature, whose function and prerogative it is to make changes or clarifications in the law.[11]

In the instant case, the record contains substantial evidence to support the conclusion reached by the Commission that the industrial injury was trivial in nature and not enhanced or made substantially greater than it would have been in the absence of preexisting incapacities. Furthermore, the facts do not in any way indicate that any of the worker's problems subsequent to the industrial injury, including his present severe arthritis in his hands, are in any way a consequence of his industrial injury.

I would affirm the order of the Commission.

ZIMMERMAN, J., does not participate herein.

---

**10.** 526 P.2d at 1189 (footnote omitted).

**11.** *Intermountain Smelting Corp.,* 610 P.2d at 337.