HALL, C.J., and STEWART, HOWE and ZIMMERMAN, JJ., concur.

**Wilma HALL, City Cab Company and State Insurance Fund, Plaintiffs,**

v.

**INDUSTRIAL COMMISSION OF UTAH, and Second Injury Fund, Defendants.**

No. 19345.

Supreme Court of Utah.

Nov. 21, 1985.

Jay A. Meservy, Salt Lake City, for Wilma Hall.

Susan B. Diana, Salt Lake City, for City Cab. Co.

Gilbert Martinez, David L. Wilkinson, Atty. Gen., Salt Lake City, for Second Injury Fund.

HOWE, Justice:

Plaintiffs challenge an order of the Industrial Commission denying Wilma Hall workers' compensation benefits from the Second Injury Fund for incapacity arising out of preexisting conditions.

On March 9, 1981, Hall was involved in an industrial accident while driving a cab for City Cab Company. She received injuries to her neck, back, and other parts of her body. City Cab's insurer, State Insurance Fund, paid medical expenses and temporary total disability benefits to Septem-

ber 15, 1981, and permanent partial disability benefits for the 10 percent impairment she sustained in the accident. When she applied for additional benefits from the Second Injury Fund, she was referred to a medical panel for evaluation. The panel reaffirmed Hall's 10 percent impairment as a result of the industrial injury. In addition, the panel found a 30 percent impairment resulting from hypothyroid obesity, a 5 percent impairment resulting from hypertensive cardiovascular disease, and a 20 percent impairment due to degenerative arthritis of the whole spine. The medical panel concluded:

> The industrial accident did not result in permanent incapacity substantially greater then [sic] the applicant would have incurred had she not had the pre-existing [in]capacity. It is possible that had she not had degenerative cervical arthritis of her spine the symptoms in her neck at the time of her accident would have been considerably less, would not have been so prolonged, and would not have rendered any permanent physical impairment. This would be anticipated but is speculative.

The administrative law judge adopted those findings and denied her any compensation from the Second Injury Fund for her preexisting incapacities. The Industrial Commission affirmed that ruling.

Hall is a 62-year-old woman, 5 feet 4 inches tall, and "grossly obese," weighing an estimated 400 pounds. According to her testimony, she weighed as little as 190 pounds in 1955. Her weight thereafter increased to around 275 pounds, where it remained until about 1975 when she went on a diet and lost weight down to 198 pounds. However, she testified that in 1979 "I goofed around and put it all back on." She claims that because of the accident and her ensuing immobility, she gained the additional 125 pounds over a period of six months. Consequently, her legs have weakened, she falls, and is generally so unsteady on her feet that she needs to resort to the use of a wheelchair.

In determining whether the Industrial Commission correctly applied the findings of basic facts to the legal rules governing the case, we will uphold the Commission so long as its decision was reasonable in light of the language of the statute, the purpose it aims to achieve, and the public policy behind it. *State of Utah (Tax Commission) v. Industrial Commission and Fulton,* Utah, 685 P.2d 1051 (1984); *Utah Department of Administrative Services v. Public Service Commission,* Utah, 658 P.2d 601 (1983). The controversy here revolves around the meaning of "substantially greater permanent incapacity" as defined in U.C.A., 1953, § 35–1–69, as that section read at the time of Hall's accident:

> If any employee who has previously incurred a permanent incapacity by accidental injury, disease, or congenital causes, sustains an industrial injury for which compensation and medical care is provided by this title that results in permanent incapacity which is substantially greater than he would have incurred if he had not had the preexisting incapacity, compensation and medical care ... shall be awarded on the basis of the combined injuries, but the liability of the employer for such compensation and medical care shall be for the industrial injury only and the remainder shall be paid out of the special fund....

In light of that language, we must determine whether the administrative law judge and the Industrial Commission correctly applied the medical findings to deny Hall compensation from the Second Injury Fund on the basis that her industrial injury did not result in permanent incapacity substantially greater than she would have incurred if she had not had the preexisting incapacities. The statute mandates that compensation be awarded on the basis of the combined injuries. Our first inquiry must, therefore, be directed to the medical finding that none of the preexisting disabilities combined with the current injury to increase Hall's permanent incapacity. 2 A. Larson, *Workmen's Compensation Law* § 59.32(g) offers a guideline:

Although the prior impairment need not combine with the compensable injury in any special way, it must add something to the disability before the Special Fund can become liable. In other words, it is not enough to show that claimant had some kind of handicap, if that handicap contributed nothing to the final disability.

■ Hall contends that her postaccident gain of 125 pounds should be considered a preexisting permanent incapacity by accidental injury, disease, or congenital causes, for which the Second Injury Fund should be liable. By her own admission, her average preaccident weight of 275 pounds did not keep her from working, bowling, hunting, and fishing. Nor was her obesity permanent by her own admission. When she applied herself, she was able to reduce her weight to, and maintain it at, below 200 pounds, thus negating both implications that her weight problem was permanent in nature or prior in existence. Consequently, her obesity is not embraced by the definition of "previously incurred permanent incapacity." For similar holdings on obesity, see *Moctezuma v. Industrial Commission*, 19 Ariz.App. 534, 509 P.2d 227 (1973), and *Shirley v. Triangle Maintenance Corp.*, 41 A.D.2d 800, 341 N.Y.S.2d 709 (1973).

■ In adopting the findings of the medical panel that Hall's previous hypertensive cardiovascular disease did not combine with the subsequent injury to render her permanent incapacity substantially greater than it would have been absent that disease, the administrative law judge and the Industrial Commission were informed that Hall had not received any care for that condition for a considerable length of time before the accident. Yet the medical panel found that Hall suffered a 5 percent whole-person impairment which was permanent. The medical panel did consider the possibility that without the 20 percent impairment due to degenerative arthritis of the whole spine, Hall's neck symptoms at the time of the accident would have been considerably less, would not have been so prolonged, and would not have rendered any permanent physical impairment. It then stated that "this would be anticipated but is speculative." That statement which was adopted by the administrative law judge and affirmed by the Commission is ambiguous at best.

This Court has consistently rejected the notion that there has to be a causal or functional relationship between the preexisting impairment and the industrial injury. All that is needed is that the two impairments cumulatively result in a substantially greater degree of disability than there would have been without the preexisting impairment. Consequently, we have held the Second Injury Fund liable for those portions of the total incapacity attributable to prior degenerative diseases and other preexisting conditions. *Second Injury Fund v. Streator Chevrolet, et al.*, Utah, 709 P.2d 1176 (1985); *Kaiser Steel Corp. v. Industrial Commission*, Utah, 709 P.2d 1168 (1985); *Paoli v. Cottonwood Hospital*, Utah, 656 P.2d 420 (1982); *Northwest Carriers v. Industrial Commission*, Utah, 639 P.2d 138 (1981); *Intermountain Smelting Corp. v. Capitano*, Utah, 610 P.2d 334 (1980); *White v. Industrial Commission*, Utah, 604 P.2d 478 (1979); and *Intermountain Health Care, Inc. v. Ortega*, Utah, 562 P.2d 617 (1977).

■ The administrative law judge's findings expressly restate the medical findings that the degenerative cervical arthritis had a possible effect on Hall's neck injury, but then call that finding speculative. However, that lack of causal connection is of no consequence. The prior permanent impairment of the spine was found to be 20 percent of the whole person. The prior permanent impairment caused by the hypertensive cardiovascular disease was rated as 5 percent. Those incapacities when combined with the incapacity caused by the industrial injury rendered the resulting incapacity substantially greater than it would have otherwise been. Nothing more is required.

■ The case is remanded for the purpose of making an award to Hall from the

Second Injury Fund for her incapacity from cardiovascular disease and arthritis of the spine and for determination of an appropriate amount of reimbursement to be made by the Second Injury Fund to the State Insurance Fund. Inasmuch as we have determined that Hall's incapacity arising from her obesity is not compensable, we do not disturb the Commission's denial of her motion to refer her to the Division of Rehabilitation for an evaluation of her employability. However, we do so without prejudice to her renewing the motion should future developments in her condition so warrant.

No costs are awarded.

STEWART and DURHAM, JJ., and JUDITH M. BILLINGS, District Judge, concur.

HALL, Chief Justice (dissenting):

I do not join the main opinion because it violates the Court's standard of review for factual issues. That standard precludes the substitution of our judgment for that of the Commission.

The Commission's findings are not to be overturned unless they are arbitrary or capricious, wholly without cause, contrary to the one inevitable conclusion from the evidence, or without any substantial evidence to support them.[1] Application of this standard to the facts of the instant case dictates affirmance of the order of the Commission.

The facts, as conceded by Hall, follow. Hall had not experienced any cervical pain prior to the accident. Following the accident, she felt pain in her head, neck, shoulders, and back. Prior to the accident, Hall had not experienced any neck or back problems and had never lost time from work for those reasons. She had never sought medical treatment for cervical ailments. Fur-

thermore, prior to the accident, she was remarkably active, worked regularly, participated in three bowling leagues, hunted, fished, did her own shopping and housekeeping, and had no problems with pain in her neck or back.

The dispositive issue in this case is limited to one of fact, namely, whether the current industrial injury resulted in permanent incapacity greater than Hall would have incurred if she had not had preexisting incapacities.[2]

Consistent with its statutory responsibility,[3] the Commission, with the assistance of a medical panel, addressed the issue and determined that permanent incapacity of 10% was attributable to the industrial injury and that such incapacity was not substantially greater than it would have been had there been no preexisting incapacities.

The main opinion criticizes that portion of the medical panel report adopted by the Commission which bears upon the preexisting arthritic condition. However, when read in proper context, and in context with the facts of this case, it clearly emerges that the medical panel duly recognized the *possibility* that the preexisting incapacity *had some effect upon* or *contributed something* to the incapacity arising from the industrial injury,[4] but, in the absence of any substantive evidence thereof, the medical panel appropriately refused to *speculate* that it did.

The record before us contains substantial evidence to support the order of the Commission. The evidence shows that Hall first experienced problems with her neck following the industrial injury. She concedes in her brief to this Court that "she had no problem with pain in her neck or back prior to the accident...."

The medical panel report concluded that "[t]he industrial accident did not result in

1. *Kincheloe v. Coca-Cola Bottling Co.,* Utah, 656 P.2d 440, 443 (1982); *Kaiser Steel Corp. v. Monfredi,* Utah, 631 P.2d 888, 890 (1981).

2. U.C.A., 1953, § 35–1–69 (the statute was subsequently amended in 1981).

3. *See Day's Market, Inc. v. Muir,* Utah, 669 P.2d 440, 442 (1983); *U.S. Fidelity & Guar. Co. v. Industrial Comm'n,* Utah, 657 P.2d 764, 766 (1983).

4. *See Day's Market,* 669 P.2d at 442.

permanent incapacity substantially greater then [sic] the applicant would have incurred had she not had the pre-existing [in]capacity...."

In regard to Hall's obesity, Dr. Alan P. Macfarlane said: "My conclusions have to be that her obesity is not due to inactivity imposed by the accident and the neck and back pain claim, but rather due to overindulgence in caloric intake.... [T]here is no essential finding of unavoidable obesity since the day of the accident...." Addressing Hall's prior heart condition, Dr. Macfarlane stated:

> In regard to the heart disease, though there is no objective evidence of heart disease and on none of her several hospitalizations for chest pain has a myocardial infarction occurred ... I nevertheless will honor Dr. Null's diagnosis of coronary heart disease.... [I]t is important to note from Dr. Null's record that he had not seen her between September 1981 and October 1982 which I would have expected to have occurred if her pain was really significantly worse. When he did see her on October 1982, her electrocardiogram remained normal and unchanged. Therefore, I see no reason to consider that her heart disease is worse....

In light of his reasoning concerning Hall's obesity and coronary heart symptoms, Dr. Macfarlane also agreed that the industrial accident did not result in permanent incapacity substantially greater than she would have incurred had she not had any preexisting incapacities.

I would affirm the order of the Commission.

ZIMMERMAN, J., does not participate herein.