**JACOBSEN CONSTRUCTION and Industrial Indemnity Company, Plaintiffs,**

v.

**John Monroe HAIR, The Second Injury Fund, and The Industrial Commission of Utah, Defendants.**

**No. 18469.**

Supreme Court of Utah.

June 29, 1983.

Stuart L. Poelman, Salt Lake City, for plaintiffs.

James R. Black, David L. Wilkinson and Frank V. Nelson, Salt Lake City, for defendants.

STEWART, Justice:

This is an appeal from an Industrial Commission order apportioning liability for workmen's compensation between the employer (or its insurer) and the Second Injury Fund. We hold that the Commission erred in its apportionment.

I.

The employee, John Hair, was injured in an industrial accident while working for Jacobsen Construction. Hair filed a claim for workmen's compensation, and the Ad-

ministrative Law Judge impanelled three physicians to evaluate Hair's injuries. The medical panel found that Hair had a pre-existing congenital absence of fingers resulting in a whole-man impairment of 25 percent, a pre-existing back problem equivalent to a whole-man impairment of 10 percent, and injuries caused by the industrial accident equivalent to a whole-man impairment of 50 percent. The medical panel concluded that these impairments combined to equal a total physical impairment of 67 percent.

The Administrative Law Judge adopted the findings of the medical panel, but how he used those figures to apportion liability between the employer and the Second Injury Fund is not clear from the record. Both Hair and his employer petitioned the Industrial Commission to review the decision.

The Commission also relied on the impairment figures of the medical panel, apportioning 50/67ths (industrial injury impairment over total impairment) or 75 percent of the compensation liability to the employer or its insurer, and 17/67ths (combined pre-existing impairment over total impairment) or 25 percent of the liability to the Second Injury Fund. The employer filed a motion for reconsideration, but the Commission affirmed its allocation ratios. The Commission reasoned, on the basis of U.C.A., 1953, § 35–1–69, that since the total impairment from all causes was 67 percent, and the impairment caused by the industrial accident was 50 percent, then the remainder of the impairment, attributable to the pre-existing conditions, had to be 17 percent.

On appeal to this Court, neither the employer and its insurer nor the Second Injury Fund challenges Hair's entitlement to compensation, the total amount of compensation due, or the requirement that the compensation liability be apportioned between them. The only issue is the proper ratio of apportionment, i.e., the amount of compensation for which each party is liable.

The employer and its insurer argue that the impairment ratings of 25, 10, and 50 percent are whole-man figures; that is, they represent the percentage of disability to a previously unimpaired man. On the other hand, the 67 percent total impairment rating is a combined partial-man figure; that is, the total of the three impairment percentages as applied to a previously impaired man. Therefore, the two types of ratings are not comparable and allocating the employer's liability on the basis of the fraction 50/67 is like applying an "'apple' number to an 'orange' formula." Instead, the 50 percent whole-man impairment must be reduced to its partial-man equivalent of 34 percent, making the proper fraction of impairment attributable to the industrial accident 34/67ths or 51 percent. Consistent with that contention, they argue that the pre-existing impairments of 25 and 10 percent combine to equal a partial-man impairment of 33 percent, not 17 percent as determined by the Commission, making the proper fraction of impairment attributable to pre-existing conditions 33/67ths, or 49 percent. They conclude that the compensation liability should therefore be apportioned 51 percent to the employer and 49 percent to the Second Injury Fund.

The Second Injury Fund argues that we should affirm the Commission's allocation, or in the alternative, simply add (rather than combine) the whole-man impairment percentages for a total of 85 percent, and then apportion 50/85ths (59 percent) of the compensation liability to the employer and 35/85ths (41 percent) to the Second Injury Fund.

II.

The Second Injury Fund, authorized by U.C.A., 1953, § 35–1–68, was created to relieve employers from liability for the pre-existing impairments of workers rendered disabled by an industrial accident. The fund thereby (1) encourages, or at least removes a disincentive to, employment of the handicapped; and (2) broadens the base of responsibility for pre-existing conditions. *E.g., Northwest Carriers, Inc. v. Industrial Commission,* Utah, 639 P.2d 138 (1981); *McPhie v. United States Steel Corp.,* Utah, 551 P.2d 504 (1976); 2 A. Larson, *The Law*

of *Workmen's Compensation* §§ 59.00, 59.-31(a) (1982).

Section 35–1–69(1) states that "the liability of the employer for [workmen's] compensation ... shall be for the industrial injury only and the remainder shall be paid out of the second injury fund." That section then proceeds to explain how compensation liability is to be apportioned between the employer and the Second Injury Fund on the basis of medical panel findings.

> A medical panel having the qualifications of the medical panel set forth in section 35–2–56, shall review all medical aspects of the case and determine *first,* the total permanent physical impairment resulting from all causes and conditions including the industrial injury; *second,* the percentage of permanent physical impairment attributable to the industrial injury; and *third,* the percentage of permanent physical impairment attributable to the previously existing condition or conditions, whether due to accidental injury, disease or congenital causes. The industrial commission shall then assess the liability for permanent partial disability compensation and future medical care to the employer on the basis of the percentage of permanent physical impairment attributable to the industrial injury only and any amounts remaining to be paid hereunder shall be payable out of the second injury fund .... [Emphasis added.]

We have interpreted this provision to mean that the employer's proportion of liability for compensation is equal to the percentage of total impairment attributable to the industrial injury. *See Northwest Carriers, Inc. v. Industrial Commission,* Utah, 639 P.2d 138 (1981); *Intermountain Smelting Corp. v. Capitano,* Utah, 610 P.2d 334 (1980); *Intermountain Health Care, Inc. v. Ortega,* Utah, 562 P.2d 617 (1977). For example, if total impairment from all causes is 60 percent, and of that total 40 percent is attributable to the industrial injury and 20 percent is attributable to pre-existing conditions, then the employer is liable for 40/60ths, or 67 percent of the compensation and the Second Injury Fund is liable for 20/60ths, or 33 percent.[1]

The medical panel in the case before us concluded that the total physical impairment from all causes and conditions was 67 percent. This figure is a *combined partial-man* rating, based on American Medical Association conversion tables, to avoid the possibility, in some cases, of separate whole-man percentages adding up to a total impairment in excess of 100 percent. Under this method each injury or impairment is rated separately on a whole-man basis; that is, at the percentage of impairment it would represent for a previously unimpaired man. Thus, both the 25 and 10 percent pre-existing impairments, as well as the 50 percent industrial injury impairment, are whole-man ratings. However, when these ratings are combined to obtain a total impairment rating they must be converted to partial-man figures. The 25 percent congenital impairment remains unchanged because Hair was at that point previously unimpaired from an industrial accident. This impairment left him a 75 percent man for rating purposes. Thus, when he suffered the subsequent 10 percent whole-man impairment, it was the equivalent, to him, of an 8 percent partial-man impairment (10% × 75% = 7.5% rounded up to 8%). At that point, then, he had a combined partial-man impairment of 33 percent (25% + 8%), leaving him a 67 percent man for rating purposes. Consequently, when he suffered the subsequent 50 percent whole-man impairment from the industrial accident, it was the equivalent, to him, of a 34 percent partial-man impairment (50% × 67% = 33.5% rounded up to 34%). At that point, then, he had a combined partial-man impairment of 67 percent (25% + 8% + 34%), which is the total impairment rating found by the medical panel.

1. The apportionments in *White v. Industrial Commission,* Utah, 604 P.2d 478 (1979), are consistent with this approach. The awards of 5 and 15 percent against the employer and Second Injury Fund, respectively, merely fail to complete the mathematical process. It is understood there that the actual proportions of compensation liability are 25 and 75 percent.

The Commission erred by mixing whole-man impairment ratings with the 67 percent combined partial-man impairment rating. However, the problem can be traced to incomplete medical panel findings. According to § 35-1-69(1), the panel must first determine "the total permanent physical impairment resulting from all causes and conditions," which it did in computing the 67 percent combined partial-man impairment. However, in supplying "the percentage of permanent physical impairment attributable to the industrial injury," under step two, the panel used the 50 percent whole-man figure, and failed to give the equivalent 34 percent partial-man figure. And in supplying "the percentage of permanent physical impairment attributable to the previously existing ... conditions," under step three, the panel used the 25 and 10 percent whole-man ratings, and failed to provide the equivalent 25 and 8 percent partial-man figures (for a combined pre-existing impairment rating of 33 percent). As a result, the Commission, in "assess[ing] the liability for [compensation] to the employer on the basis of the percentage of ... impairment attributable to the industrial injury only," relied on the 50 percent whole-man impairment rating and assessed 50/67ths (75 percent) to the employer, and assessed the remaining 17/67ths (25 percent) to the Second Injury Fund.

The correct assessment to the employer should have been 34/67ths (51 percent), comparing one partial-man rating to another, because the industrial injury impairment rating used to arrive at the 67 percent total was the 34 percent partial-man rating, not the 50 percent whole-man rating. Likewise, the correct assessment to the Second Injury Fund should have been 33/67ths (49 percent), because the combined pre-existing partial-man impairment rating was 33 percent, not 17 percent. This result is consistent with the policy of broadening the base of responsibility for pre-existing conditions, *McPhie v. United States Steel Corp., supra,* and with the rule that the employer be liable for only that portion of compensation attributable to the industrial injury alone, U.C.A., 1953, § 35-1-69(1); 2 A. Larson, *The Law of Workmen's Compensation* § 59.34(a) (1982).[2]

The Commission's ruling on the apportionment of compensation liability is not consistent with the policy established by § 35-1-69 and therefore can not stand as a matter of law. *See Salt Lake City Corp. v. Department of Employment Security,* Utah, 657 P.2d 1312 (1982).

Reversed and remanded for further consideration. No costs.

HALL, C.J., and OAKS, HOWE and DURHAM, JJ., concur.

2. The Second Injury Fund's alternative argument, that we merely add together the three whole-man impairment percentages for a total of 85 percent and then apportion 50/85ths of the liability to the employer and 35/85ths to the fund, is obviously unsound. By simply adding whole-man impairment percentages, the possibility exists of deriving a total impairment in excess of 100 percent. Furthermore, an 85 percent total impairment would be contrary to the 67 percent found by the medical panel and accepted by all parties, the Administrative Law Judge, and the Commission.