## ALVIN G. RHODES PUMP SALES and State Insurance Fund, Plaintiffs,

v.

## INDUSTRIAL COMMISSION OF UTAH and Second Injury Fund, Defendants.

### No. 19163.

Supreme Court of Utah.

April 26, 1984.

James D. Black, Salt Lake City, Stephen W. Julien, Cedar City, for plaintiffs.

Gilbert Martinez, Admin. Second Injury, Frank Nelson, Asst. Atty. Gen. (Ind. Comm.), Salt Lake City, for defendants.

STEWART, Justice:

In this workmen's compensation case, the State Insurance Fund ("State Insurance") seeks reimbursement from the Second Injury Fund ("the Fund") for medical and disability payments that State Insurance made pursuant to a settlement with an injured employee of the insured. An administrative law judge refused to order reimbursement. The Industrial Commission denied a petition for review. We reverse and remand.

The administrative law judge found the following facts. Wilbur G. Rhodes was an employee of Rhodes Pump Sales. On two separate occasions, once on August 15, 1977, and later on May 1, 1978, he injured his back lifting heavy objects at work. Back problems and medical treatment ensued, causing Rhodes to miss several days of work, and causing a permanent back impairment. State Insurance paid for Mr. Rhodes' medical treatment and missed days of work as those expenses were incurred.

On approximately July 23, 1980, Mr. Rhodes signed a written settlement with State Insurance, in which he (1) accepted the payments to that date as payment in full for the medical and temporary disability benefits due him, and (2) agreed to accept $6,676.80 as a settlement for his permanent partial impairment. Based on a medical report, the settlement agreement set the level of permanent partial impairment of Rhodes' back at 20%. At that time, no party knew that Rhodes had any pre-existing back conditions. Apparently for this reason, the Second Injury Fund was not a party to the settlement.

In 1981, Mr. Rhodes filed an application for an adjustment of his prior claim. He alleged that his back had deteriorated since the medical treatment was completed and thus sought an increased permanent partial impairment rating. He named Rhodes Pump Sales, the State Insurance Fund, and the Second Injury Fund as defendants.

As required by statute, U.C.A., 1953, § 35–1–69, the case was submitted to a medical panel for a medical examination. The panel found that Mr. Rhodes' back had not deteriorated from the 20% impairment level previously determined. The panel allocated the causes of his impairment as follows:

(1) Five percent for the May 1978 injury;

(2) Five percent for the August 1977 injury; and

(3) Ten percent for "previously-existing conditions" due to "degenerative arthritis and disk disease of the low back."

The finding as to the pre-existing conditions arguably made the Fund liable for part of the previously paid medical and disability benefits. § 35–1–69.

In addition, the medical panel also found that Rhodes had a pre-existing 5% neurological impairment, known as "sensory polyneuropathy," which was caused by chronic alcoholism that Rhodes had suffered prior to the industrial injuries. Based on these separate whole man impairment ratings, the medical panel arrived at a combined partial man impairment rating of 24%. *See generally Jacobsen Construction v. Hair*, Utah, 667 P.2d 25 (1983).

The administrative law judge initially denied Mr. Rhodes' request that his permanent impairment rating be increased. The judge reasoned that although the new impairment rating of 24% was 4% greater than the 20% rating agreed on in the settlement, the 4% increase was due to a condition (chronic alcoholism) which had existed at the time of the 1980 settlement. Thus, the judge held that Rhodes was not entitled to any additional benefits. The judge also refused to order the Fund to reimburse State Insurance for medical expenses, temporary total disability payments, or permanent partial disability payments.

Mr. Rhodes and the plaintiffs contested the order. Rhodes asserted that he was entitled to a 4% disability rating increase; the plaintiffs asserted that they were entitled to reimbursement from the Fund for $^{15}/_{25}$ of the medical and temporary total benefits they had paid to Rhodes and for $^{10}/_{20}$ of the permanent partial disability that they had paid. After negotiations be-

tween the parties, the judge signed an amended order that: (1) increased Mr. Rhodes' permanent partial impairment rating by 4%; (2) ordered the Fund to pay Mr. Rhodes $1,335.36 for the 4% increase; and (3) ordered the Fund to reimburse State Insurance for only ¼₄ of the temporary total disability and medical expenses it had paid.

Plaintiffs then filed a petition for review with the Industrial Commission. In denying the petition, the Commission referred to the above facts and stated: "The parties to the 1980 compensation agreement are bound by the terms of that document and no further changes in the apportionment should be permitted."

On appeal to this Court, State Insurance argues that the Fund is required by § 35–1–69(1) to reimburse State Insurance. That section defines the scope of the Fund's responsibility:

> If any employee who has previously incurred a permanent incapacity by accidental injury, disease, or congenital causes, sustains an industrial injury for which compensation and medical care is provided by this title that results in permanent incapacity which is substantially greater than he would have incurred if he had not had the pre-existing incapacity, [then] compensation and medical care ... shall be awarded on the basis of the combined injuries, *but the liability of the employer for such compensation and medical care shall be for the industrial injury only and the remainder shall be paid out of the [second injury fund]....* [Emphasis added.] [1]

The Fund does not contend that the settlement amounts paid for medical expenses, temporary total disability or permanent partial impairment were excessive, nor does it contend that the findings of 10% impairment due to the prior disk disease and 5% impairment due to alcoholism were in error. Clearly, if the medical ·expenses, temporary total disability and permanent

partial impairment payments had been paid by State Insurance pursuant to an adjudicated award, § 35–1–69(1) would require the Fund to reimburse State Insurance for a portion of those expenses. *U.S. Fidelity & Guaranty Co. v. Industrial Commission,* Utah, 657 P.2d 764 (1983); *Intermountain Smelting Corp. v. Capitano,* Utah, 610 P.2d 334 (1980); *White v. Industrial Commission,* Utah, 604 P.2d 478 (1979).

The Fund argues that: (1) § 35–1–69(1) applies only to adjudicated awards, not to settlements, and (2) even if that section applies to settlements, it does not require the Fund to reimburse an employer for settlements to which the Fund was not a party.

The Fund relies on *Pacheco v. Industrial Commission,* Utah, 668 P.2d 553 (1983). The issue in *Pacheco* was whether the provision in § 35–1–78, which requires compensation awards made by the Industrial Commission to include interest, applies to settlements as well as to awards. We held that § 35–1–78 did not apply to settlements, stating:

> Unlike an award, a settlement involves no factual determination by the Commission of liability or the amount of damages. In view of this distinction, we cannot presume that the Legislature intended the interest provision to apply to settlements.

*Id.* at 555.

The present case is distinguishable from *Pacheco.* The settlement in *Pacheco* concerned only the employee and the employer or its insurer. Our ruling that § 35–1–78 does not require the Commission to award interest on a settlement was consistent with an employee's being free to bargain for interest on the settlement amount.

▇ In contrast to *Pacheco,* the Second Injury Fund may be liable for a part of a settlement negotiated between an employee and the employer or its insurance carrier,

---

1. This subsection has since been amended, but is still substantially the same. *See* § 35–1–69 (Supp.1983).

when the employee, the employer, and its insurance carrier did not know that the Fund was liable. In this case, for example, the pre-existing condition was not known until after the settlement. Under such conditions, good reason exists to apply § 35–1–69(1) to settlements.

■ The law generally encourages settlements. *Tracy-Collins Bank & Trust Co. v. Travelstead*, Utah, 592 P.2d 605, 607 (1979); *Reynolds v. Merrill*, 23 Utah 2d 155, 460 P.2d 323 (1969). If we were to rule, as the Fund requests, that § 35–1–69(1) does not apply to settlements, then insurance companies and employers might be deterred from settling any case in which reimbursement from the Fund might be an issue.

The Fund's back-up argument is that even if § 35–1–69(1) does apply to settlements, it applies only to settlements to which the Fund is a party.

■ An insurance carrier cannot always know at the outset of a workmen's compensation case whether the Fund's interests are or might be involved. In *Paoli v. Cottonwood Hospital*, Utah, 656 P.2d 420 (1982), we held that if the Fund failed to receive proper notice in a workmen's compensation case, then it could, "where necessary, compel the reopening of [a] hearing to allow the Fund to submit evidence bearing upon its special interest and liability." *Id.* at 423. Thus, the Fund could be held liable for its statutory liabilities even after the completion of a hearing. The Fund is not insulated from its liabilities because the circumstances giving rise to those liabilities were not foreseen. In *Paoli*, the Court stated:

> The circumstances that alert the parties ... to a potential payment from the Second Injury Fund are, of course, exceptional, and sometimes will not appear until the proceedings are underway. It is therefore inexpedient to require the Fund to be a participant or even a party in every proceeding before the Commission, and the statutes do not require this.

.    .    .    .    .

> ... [T]he Second Injury Fund need not be a party to every workmen's compensation proceeding that may ultimately affect its interests.

656 P.2d at 422, 423.

■ The fundamental policy underlying *Paoli* is that the intricate statutory pattern governing the liabilities of the Fund to insurance carriers should be accorded due protection by the procedural law, which must assure fairness to the Fund and also give effect to the basic statutory scheme for allocating liability for the payment of compensation. These principles control the liability of the Fund as much when a compensation payment is made pursuant to settlement as when an award is made after a full dress hearing is conducted.

In the instant case, Mr. Rhodes' pre-existing back condition was latent and did not manifest itself until after the settlement. The record indicates that none of the settling parties knew of the prior condition. The medical report upon which the settling parties relied stated that except for some prior unrelated treatment in a V.A. hospital, Rhodes' "past history is not otherwise significant." The Industrial Commission stated in its denial of the motion for review that at the time of the settlement, "[p]re-existing conditions were not indicated as a part of the 20% permanent partial impairment."

The Fund was notified at the earliest possible date of its potential liability arising out of the settlement. The earliest time the parties knew or even suspected the existence of the pre-existing condition was when Mr. Rhodes applied for an increase in permanent partial disability.

Our ruling in this case is consistent with the position taken by other states. *American Standard, Inc. v. Stephen*, Ky.App., 565 S.W.2d 158 (1978), held that a failure to include Kentucky's "Special Fund" as a party to a settlement did not preclude joining it in a later action for increased benefits. As here, the employee did not know of a pre-existing condition until after the settlement. The court noted that the Spe-

cial Fund had been notified as soon as possible, stating:

> Once the employee discovered the true nature and extent of his disability, he sought to make the Special Fund a party at his first opportunity to do so.

> .  .  .  .  .

> Under these circumstances, where there was no evidence that either party withheld any information from the other[,] ... we find that the board correctly reopened the award, made the Special Fund a party, and apportioned the award.

*Id.* at 162.

In *Subsequent Injury Trust Fund v. Alterman Foods, Inc.*, 162 Ga.App. 428, 291 S.E.2d 758 (1982), an employee settled with the employer and later received an additional award from an administrative law judge. The employer sought reimbursement from the Georgia counterpart to Utah's Second Injury Fund of all amounts (apparently including the settlement) paid after the injury had occurred. The Georgia second injury fund sought to avoid liability on the grounds that the prior proceedings between the employee and the employer were conclusive of the employer's right to reimbursement. The Georgia appellate court ruled that although the employer had not sought reimbursement in the prior proceeding, it had the right to do so now. *See also Arduser v. Daniel International Corp.*, 7 Kan.App.2d 225, 640 P.2d 329 (1982) (special fund required to reimburse insurer for an entire settlement). *But see Yocom v. Jordan Auto Parts Co.*, Ky., 521 S.W.2d 519 (1975) (reimbursement denied). *See generally* 2 A. Larson, *The Law of Workmen's Compensation* § 59.31(f) (1982).

We emphasize that in this case the employee, not the insurance carrier, sought to reopen the case after settlement. Therefore, this case does not necessarily mean that an insurance carrier may seek reimbursement after settlement, unless the employee reopens the case to obtain additional compensation for the same injury that was the subject matter of the settlement.

The Fund contends that no compensation should be allowed Mr. Rhodes for his chronic alcoholism. In effect, the Fund requests affirmative relief by seeking a reversal of the 4% increase in the permanent partial disability rating. The Fund raises this issue for the first time in its respondent's brief without having cross-petitioned for review. Moreover, the Fund failed to raise the issue before the Commission. In the Fund's answer to State Insurance's motion to review the order of the administrative law judge before the Commission, the Fund neither disputed the 4% increase nor filed its own motion for review. Instead, the Fund in fact accepted the increase by taking the position that the "responsibility of the Second Injury Fund for reimbursement should be 4/24 ... of any medical expenses paid."

■■ Ordinarily questions not raised in an administrative tribunal are not subject to judicial review. *E.g., Waikiki Resort Hotel, Inc. v. City and County of Honolulu*, 63 Haw. 222, 624 P.2d 1353 (1981); *Leschi Improvement Council v. Washington State Highway Commission*, 84 Wash.2d 271, 525 P.2d 774 (1974); 2 Am. Jur.2d *Administrative Law* § 724 (1962); 73A C.J.S. *Public Administrative Law and Procedure* § 191 (1983). Even though that rule may not be applied in exceptional cases, see cases cited at 73A C.J.S. *Public Administrative Law and Procedure* § 191 n. 93 (1983), this is not such a case. The Fund had full opportunity to raise the issue of chronic alcoholism and failed to do so at two critical junctions. No circumstances of injustice compel review of the issue on appeal. In declining to address the issue on procedural grounds, we do not express any view whatsoever on the merits of the issue.

■ In light of the above, we hold that State Insurance is entitled to have an apportionment between it and the Fund of the medical expenses, temporary total disability, and permanent partial disability payments it has paid to Mr. Rhodes. On remand, these payments should be appor-

tioned in the customary way as required by § 35-1-69.

Reversed and remanded.

OAKS and DURHAM, JJ., concur.

HALL, Chief Justice (Concurring and Dissenting):

I join the opinion of the Court, except the portion thereof that declines to address the contention of the Fund that no compensation shall be allowed Rhodes for his condition of chronic alcoholism.

Notwithstanding the fact that the Fund did not seek reversal of that portion of the award based upon chronic alcoholism, as a matter of law, Rhodes is not entitled to such an award.

This Court should exercise its prerogative to correct this obvious error in the application of the law and should, upon remand, order the reversal of the 4% increase in the permanent partial disability rating attributable to alcoholism.

HOWE, Justice (Concurring and Dissenting):

I dissent from that part of the majority opinion which requires the Second Injury Fund to reimburse the State Insurance Fund for part of the monies paid out by it under the settlement agreement of July 23, 1980. I agree that after Rhodes re-opened his claim and the medical panel found that part of his impairment was due to pre-existing conditions, the Second Injury Fund should bear its proper proportion of compensation thereafter payable to Rhodes.

The Second Injury Fund was not a party to the settlement agreement which was entered into by Rhodes and the State Insurance Fund upon competent medical evidence then before them. I think it unfair and unsupported by the law that the Second Injury Fund can now be made to bear part of past payments since it did not participate in the making of the agreement and there was no medical evidence then available that it had any liability.

The cases cited by the majority in support of its position do not appear to me to be authority that reimbursement should be ordered under these circumstances. I have no quarrel with *American Standard, Inc. v. Stephen*, Ky.App., 565 S.W.2d 158 (1978) which permitted the Kentucky Special Fund to be joined in a re-opened claim for increased benefits. But there the Special Fund was not ordered to bear any part of the benefits already paid under the prior settlement to which it had not been a party. Likewise, in *Subsequent Injury Trust Fund v. Alterman Foods*, 162 Ga.App. 428, 291 S.E.2d 758 (1982) it does not appear that the Subsequent Injury Fund was required to reimburse the employer for any funds it had paid out pursuant to a *settlement* to which it had not been a party. The case holds that reimbursement could be sought against the Subsequent Injury Fund for monies paid out pursuant to an *award* but by statute the Fund was protected from the res judicata effect of the award to which it had not been a party. In *Arduser v. Daniel International Corp.*, 7 Kan.App.2d 225, 640 P.2d 329 (1982) it appears in the statement of facts that the Kansas Workmen's Compensation Fund was required to reimburse the employer and its insurance carrier for certain amounts but the question of reimbursement was not an issue in the case and is not discussed in the court's opinion.

I do not agree with the majority that denying reimbursement will discourage settlements. The settling parties are well protected since any of them may, as here, re-open the claim when new medical evidence is found. The Second Injury Fund may then be brought in and made to bear its proportion of future payments.