**STATE of Utah, Plaintiff and Respondent,**

v.

**Caleen Lowe JONES, Defendant and Appellant.**

**No. 860199–CA.**

Court of Appeals of Utah.

April 15, 1987.

**400**

James L. Shumate, Cedar City, for defendant and appellant.

David L. Wilkinson, Atty. Gen., Earl F. Dorius, Asst. Atty. Gen., for plaintiff and respondent.

Before ORME, GREENWOOD and BILLINGS, JJ.

## OPINION

ORME, Judge:

Defendant was convicted of child abuse, a second degree felony, and sentenced to a term of not less than one nor more than fifteen years at the Utah State Penitentiary. On appeal, she seeks reversal or modification of her conviction on the theory that "physical injury" as defined in Utah Code Ann. § 76–5–109(1)(b) (1986) means a single act of abuse and cannot mean several such acts. Her theory ignores the definitional scheme in the child abuse statute, and its acceptance would thwart the purpose of the act. Accordingly, we affirm.

## THE STATUTORY SCHEME

Defendant's primary contention on appeal is that if the child abuse statute were properly construed, her conviction should be reversed or at least reduced to a misdemeanor.[1]

Since the issue is one of statutory construction, and the statute is of recent origin, we quote the statute in its entirety:

(1) As used in this section:

(a) "Child" means a human being who is 17 years of age or less;

(b) "Physical injury" means impairment of the physical condition including, but not limited to, any contusion of the skin, laceration, failure to thrive, malnutrition, burn, fracture of any bone, subdural hematoma, injury to any internal organ, any injury causing bleeding, or any physical condition which imperils a child's health or welfare;

(c) "Serious physical injury" means any physical injury which creates a permanent disfigurement; protracted loss or impairment of a function of a body member, limb or organ, or substantial risk of death.

(2) Any person who inflicts upon a child serious physical injury or, having the care and custody of such child, causes or permits another to inflict serious physical injury upon a child is guilty of an offense as follows:

(a) If done intentionally or knowingly, the offense is a felony of the second degree;

(b) If done recklessly, the offense is a felony of the third degree;

---

1. Defendant also contends there was prejudicial error in permitting the state's expert to testify concerning the cumulative effects of the repeated acts of abuse suffered by Defendant's child. As will become clear, the propriety of that testimony turns entirely on the construction given the statute.

(c) If done with criminal negligence, the offense is a class A misdemeanor.

(3) Any person who inflicts upon a child physical injury or, having the care and custody of such child, causes or permits another to inflict physical injury upon a child is guilty of an offense as follows:

(a) If done intentionally or knowingly, the offense is a class A misdemeanor;

(b) If done recklessly, the offense is a class B misdemeanor;

(c) If done with criminal negligence, the offense is a class C misdemeanor.

(4) Criminal actions under this section may be prosecuted in the county or district where the offense is alleged to have been committed, where the existence of the offense is discovered, where the victim resides, or where the defendant resides.

Utah Code Ann., § 76–5–109 (1986).

The statute defines child abuse crimes of varying severity based on six possible combinations of the extent of injury sustained by the child and the degree of the perpetrator's culpability. At one end of this scale is class C misdemeanor status for the perpetrator who causes or permits non-serious injury as a result of criminally negligent conduct. At the other end of the scale is second degree felony status for persons who intentionally or knowingly cause or permit serious injury to a child. The act also provides definitions of the terms "physical injury" and "serious physical injury" and for liberal venue.

## PERTINENT FACTS

The key facts in this case are undisputed. Defendant and her 16–month old baby moved in with Defendant's boyfriend. Approximately a month later, the baby sustained cardiac arrest, which was reversed, but he died shortly after from edema, or critical swelling, of the brain. Only weeks prior to his death, the baby sustained sec-

ond degree burns on his buttocks and down one leg. The burns were in a grid-like pattern corresponding to the inside of a clothes dryer door. Defendant was slow in getting her baby to the hospital. After the baby's release from the hospital, Defendant failed to follow instructions for treatment of the burns, permitting the baby's diapers to remain saturated with urine. A police investigation ensued, and Defendant agreed to keep her baby away from her boyfriend. Nevertheless, she and her baby moved back in with the boyfriend. Shortly after the three were reunited, the baby suffered cardiac arrest. Medical personnel who had treated the burns reported numerous bruises of varying sizes and ages over much of the baby's body. Medical personnel who re-established the baby's heartbeat noticed puncture wounds, probably inflicted with a fork, on the bottom of his feet.

Dr. William Martin Palmer, a physician and expert on child abuse, testified at trial that no one of the identified instances of abuse, taken alone, created "permanent disfigurement, protracted loss or impairment of a function of a body member, limb or organ[;] or substantial risk of death." However, Dr. Palmer testified, over Defendant's objection, that the *combination* of the abusive acts *did* pose a substantial risk of death.

## ANALYSIS

Defendant argues that section 1(c) of the child abuse statute defines "serious physical injury" in terms of *"any* physical injury which creates a ... substantial risk of death." Defendant equates "any" with "one," and argues that since no *one* of the occurrences created a substantial risk of death to the baby, she can not be guilty of causing or permitting *serious* physical injury under Section 2 of the statute.[2] On that basis, her conviction should be reversed or, at the least, reduced to a conviction under Section 3 for abuse of a non-serious type. It is Defendant's contention that her con-

**2.** Although not raised in the briefs, the State pointed out at oral argument that since Dr. Palmer also testified that the baby died from brain swelling and that the swelling most likely resulted from a deliberate violent act, such as severe shaking, the jury's verdict of conviction can be sustained even if Defendant's argument as to the meaning of the statute is accepted. In view of the decision we reach, it is not necessary to consider this contention. ,

viction could be sustained only if the burn, *by itself,* or neglect in the treatment of the burn, *by itself,* or an individual bruise, *by itself,* or an individual puncture wound, *by itself,* could be shown to have been life-threatening.

▇▇▇ Defendant's theory might be plausible if in enacting the child abuse act the Legislature had in mind the ordinary meaning of the word "injury." "Injury" in common parlance means *"an act* that damages, harms, or hurts." *Webster's Third New International Dictionary* 1164 (1986) (Emphasis added). However, the Legislature has provided in the child abuse act a definition which is expansive and clear, and which precludes the construction argued for by Defendant. Leaving aside the several examples mentioned in subsection 1(b) of the statute, "physical injury" is defined there simply as an "impairment of the physical condition." "Serious physical injury," under subsection 1(c), accordingly means "impairment of the physical condition" which results in "a permanent disfigurement; protracted loss or impairment of a function of a body member, limb, or organ[;] or substantial risk of death." [3] Since Defendant's baby was subjected to a course of abuse which constituted "impairment" of his condition, and since that impairment entailed a "substantial risk of death" as the state's expert testified,[4] it follows that Defendant was duly convicted of second degree felony child abuse since the jury also concluded that Defendant intentionally or knowingly abused her child and/or intentionally or knowingly permitted her boyfriend to do so.[5]

▇▇▇ While our affirmance in this case is based on a plain reading of the act under which Defendant was convicted, other factors support our conclusion. The Court's primary responsibility in construing legislation is to give effect to the intent of the Legislature. *Christensen v. Industrial Commission,* 642 P.2d 755, 756 (Utah 1982). In addition,

> one of the fundamental rules of statutory construction is that the statute should be looked at as a whole and in light of the general purpose it was intended to serve; and should be so interpreted and applied as to accomplish that objective. In order to give the statute the implementation which will fulfill its purpose, reason and intention sometimes prevail over technically applied literalness.

*Andrus v. Allred,* 17 Utah 2d 106, 109, 404 P.2d 972, 974 (1965). To limit the definition of "serious physical injury" to one individual "injury" in the literal sense would thwart the major purpose of the act, which is to curb the increase in child abuse by imposing stiffer penalties on child abusers. *See* "Utah Legislative Survey," 1982 Utah L.Rev. 164. Even absent the definitional provisions upon which we rely, we would not assume that the Legislature intended to distinguish between severe abuse caused by a single violent act and severe abuse typified by a series of violent acts with a cumulatively debilitating effect.

---

**3.** At oral argument, Defendant argued that "physical injury" and "serious physical injury" are, in effect, two totally self-standing and independent concepts. According to Defendant, "physical injury" means just what subsection 1(b) says it does and includes the more expansive concept of "impairment." By contrast, "serious physical injury" means just what it says, and it does not include the concept of "impairment." We cannot agree. Even though the Legislature did not specifically state that the term "physical injury" as used in subsection 1(c) shall be defined in accordance with subsection 1(b), it would be absurd to look to Webster's for the definition of "physical injury" as used in subsection 1(c) where a specific definition of that very term is provided in the immediately preceding subsection of an integrated and carefully drawn statute. This is particularly true where the text introducing the definitions makes clear that the definitions are to be used throughout the entire statutory section.

**4.** Since we reject Defendant's interpretation of the statute, we necessarily find no error in permitting the doctor to testify that the overall impairment of the baby's physical condition was, in his opinion, life-threatening.

**5.** Defendant's boyfriend, James Chad Anderson, pleaded guilty to third degree felony child abuse and was sentenced to a prison term of not to exceed five years. The trial court recommended that the entire sentence be served.

Finally, we note that Utah Code Ann. § 76-1-106 (1978) provides that the criminal laws of this state shall not be construed strictly, but rather "according to the fair import of their terms to promote justice."

Proper interpretation of the child abuse statute requires our conclusion that multiple injuries which cumulatively result in impairment of a child's physical condition will sustain a second degree felony conviction where the impairment is of the requisite magnitude and the perpetrator's conduct is knowing or intentional. Defendant's conviction is accordingly affirmed.

BILLINGS and GREENWOOD, JJ., concur.