**Richard D. OTVOS, Petitioner,**

v.

**INDUSTRIAL COMMISSION OF UTAH, Provo Canyon School, Workers Compensation Fund, Insurance Company of North America/AETNA and Second Injury Fund, Respondents.**

No. 870029–CA.

Court of Appeals of Utah.

March 10, 1988.

E. Craig McAllister, McAllister & Chuntz, Provo, for Otvos.

Erie Boorman, Salt Lake City, for Second Injury Fund.

Before ORME, BENCH and BILLINGS, JJ.

OPINION

ORME, Judge:

Otvos appeals an Industrial Commission order denying him compensation for preexisting unrelated impairments in connection with two industrial injuries. The Commission denied compensation because the inju-

ries, considered separately from certain prior injuries, did not meet the minimum threshold requirements set forth in § 35–1–69 of the Utah Workers' Compensation Act. Utah Code Ann. § 35–1–69 (1987). Otvos claims several industrial injuries should be combined to reach the threshold requirement for compensation of nonaggravated, preexisting conditions, and seeks permanent impairment benefits for his nonaggravated preexisting conditions. We affirm.

## FACTS

Otvos sustained numerous injuries while supervising students at the Provo Canyon School for antisocial boys, where he was employed since 1982. The industrial injuries directly involved in this case consist of two separate back injuries. The first injury occurred on December 23, 1984, when he twisted his back while attempting to restrain a recalcitrant student. The second back injury occurred on January 1, 1986, while Otvos was again attempting to physically restrain a student. In addition to these injuries, Otvos had preexisting congenital birth defects in both of his arms and had also sustained injuries from earlier incidents at the school.

The school's insurance carrier accepted liability for both the 1984 and 1986 back injuries and paid temporary total compensation and medical expenses. Otvos filed separate applications for administrative hearing seeking permanent partial impairment benefits as well as temporary total compensation and medical benefits for these two industrial injuries. The applications were consolidated and set for hearing, and the case was referred to a medical panel for review.

The medical panel found that Otvos's total physical impairment resulting from all causes was a 50% loss of body function.

The total impairment consisted of 20% attributable to the back, 14% attributable to the right arm, 12% attributable to the left arm, 15% attributable to the right leg, and 3% attributable to the left leg.[1] (The leg impairments resulted from previous injuries Otvos sustained at the school.) The panel determined that of the 20% impairment attributable to the back, 5% was caused by the December 23, 1984 industrial accident and the remaining 15% was caused by preexisting back conditions which were aggravated by that accident. The 14% and 12% preexisting arm impairments were neither caused nor aggravated by any industrial injury. The January 1, 1986 industrial accident did not result in any ratable permanent impairment.

Otvos filed objections to the medical panel report which the administrative law judge overruled. Thereafter, the judge entered findings of fact, conclusions of law, and an order, in which he adopted the medical panel report and awarded Otvos permanent partial disability benefits for his 5% back condition found attributable to the December 23, 1984 accident, to be paid by the Workers' Compensation Fund of Utah, and a 15% preexisting aggravated permanent impairment, to be paid by the Second Injury Fund. No award was made for the 1986 back injury because it did not result in any permanent impairment. The impairments of the legs had previously been rated and compensated as permanent partial impairments. The industrially-caused 5% impairment of the back did not meet the 10% threshold minimum requirement set forth in the Combined Injury Statute, Utah Code Ann. § 35–1–69(1)(b) (1987). Therefore, no award was made for the preexisting arm impairments because they were attributable to non-industrial causes and were neither related to nor aggravated by the 1984 or 1986 accidents.

---

1. The medical panel assigned Otvos a total physical impairment rating from all causes and conditions of 50%. This figure is a combined partial-person rating based on American Medical Association conversion tables. *See Jacobsen Constr. v. Hair,* 667 P.2d 25, 27 (Utah 1983). Under this method, each injury or impairment is rated separately on a whole-person basis, i.e., at the percentage of impairment it would represent for a previously unimpaired worker. When these separate ratings are combined to obtain a total impairment rating, they must be converted to partial-person figures, which is why in this case the itemized percentages add up to 64%. *See id.*

Otvos filed a motion for review challenging the denial of compensation for his arm impairments. The motion was denied by the Industrial Commission, and this petition for review followed.

Neither the facts in this case nor the findings of impairment are in dispute. The legal issue presented is one of statutory interpretation: Can Otvos combine the permanent impairment resulting from separate industrial injuries with the same employer in order to reach the 10% threshold necessary for compensation of preexisting conditions, neither caused nor aggravated by any of the industrial injuries, under the 1981 amendments to § 35–1–69, the Combined Injury Statute? If the answer is in the affirmative, then Otvos is entitled to have the 5% impairment rating from his 1984 back injury combined with the impairment ratings attributable to his earlier leg injuries to pass the 10% threshold requirement and thus become entitled to compensation for his birth defects, just as he would have been if the 1984 injury had itself resulted in an impairment rating of 10% or more. If the answer is in the negative, his preexisting arm impairments will go uncompensated under the workers' compensation program.

## STATUTORY BACKGROUND

Section 35–1–69 mandates compensation for combined injuries resulting in permanent impairment through a fund established by the Legislature called the Second Injury Fund. The Second Injury Fund, previously known as the Special Fund, has been an integral component of Utah's workers' compensation scheme since its enactment in 1919. The fund was created to relieve employers from liability for the preexisting impairments of workers rendered disabled by an industrial accident. The fund removed a disincentive to hiring the handicapped, while at the same time broadening the base of responsibility for preexisting conditions. *Jacobsen Constr. v. Hair*, 667 P.2d 25, 26 (Utah 1983).

If a worker having a preexisting permanent partial disability was injured and incurred a permanent partial disability that was greater than he would have incurred but for its combination with the preexisting partial disability, then the worker would receive complete compensation for all disabilities. *Second Injury Fund v. Streator Chevrolet*, 709 P.2d 1176, 1178 (Utah 1985). The worker's present employer had to provide compensation only for the current injury while the Second Injury Fund provided compensation for the preexisting condition. *Id.* at 1178–79.

The provision remained substantially unchanged from 1919 until 1963, when it was amended so that the preexisting permanent partial impairment did not have to be the result of an industrial accident but could be the result of "accidental injury, disease, or congenital causes." 1963 Utah Laws, ch. 49, § 1 (codified in Utah Code Ann. § 35–1–69(1) (1987)). The statute was also changed to require that the permanent incapacity resulting from the combined impairments be "substantially greater" rather than just "greater" than it would have been without the preexisting incapacity. *Id.*

Prior to 1981, the Utah Supreme Court interpreted the amended provision in a number of significant cases. In *Intermountain Health Care, Inc. v. Ortega*, 562 P.2d 617 (Utah 1977), the Court held that the "substantially greater" requirement does not mean the preexisting condition must be greater than the subsequent injury, but simply means that it must be some "definite and measurable" component of the overall disability. *Id.* at 619. In addition, the Court concluded that no causal relationship was required between the industrial injury and the preexisting impairment as long as the two impairments combined resulted in a greater degree of disability. *See Intermountain Smelting Corp. v. Capitano*, 610 P.2d 334 (Utah 1980). *See also Second Injury Fund v. Streator Chevrolet*, 709 P.2d 1176, 1179, 1180 n. 1 (Utah 1985); *Veyo Concrete Prods., Inc. v. Industrial Comm'n*, 710 P.2d 172, 173 (Utah 1985).

The Industrial Commission did not agree with the *Ortega* decision and its progeny and voiced its disapproval by refusing to

follow it in a number of cases. *Second Injury Fund v. Streator Chevrolet*, 709 P.2d at 1179. The Utah Supreme Court "suggested that the Commission address its concerns to the legislature, which has the power to change the statute, rather than taking the matter into its own hands by refusing to follow [the] Court's decisions." *Id.* The Commission evidently accepted the invitation and, according to the Second Injury Fund, persuaded the Legislature to adopt the 1981 amendment to the statute, which amendment is the subject of this appeal.[2] *See id.*

The 1981 amendment replaced the "definite and measurable" definition of "substantially greater," articulated in *Ortega*, with two more concrete tests. These tests are designed to distinguish between situations where an industrial injury aggravates or is aggravated by a preexisting impairment and those where the industrial injury has no causal relationship to a preexisting impairment. *Id.* at 1180. The statute now provides, in relevant part:

> For purposes of this section, (a) any aggravation of a pre-existing injury, disease, or congenital cause shall be deemed "substantially greater", and compensation, medical care, and other related items shall be awarded on the basis of the combined injuries as provided in this Subsection (1), and (b) where there is no such aggravation, no award for combined injuries may be made unless the percentage of permanent physical impairment attributable to the industrial injury is 10% or greater and the percentage of permanent physical impairment resulting

from all causes and conditions, including the industrial injury, is greater than 20%. Utah Code Ann. § 35-1-69(1) (1987).

The Utah Supreme Court interpreted the 1981 amendments for the first time in *Streator*. With respect to subsection (1)(a), involving aggravation, the Court found the thrust of the amendment clear in requiring compensation "if the industrial injury results in a permanent impairment that is aggravated by or aggravates a preexisting permanent impairment *to any degree....*" 709 P.2d at 1181. The Court also construed the independent test for compensation under subsection (1)(b), which governs situations where the industrial injury bears no relationship to a preexisting injury or condition. That subsection, the Court concluded, requires that the industrial injury produce a permanent impairment of 10% or more and that the total impairment from combined causes, including the industrial injury, be greater than 20%. *Id.*

While the Court in *Streator* interpreted subsection (1)(b), it did so only insofar as it involved the question of whether the "impairment attributable to the industrial injury" should be fixed on a "partial-man" or "whole-man" basis,[3] 709 P.2d at 1181, and did not address the issue presented in this case. In *Streator*, the Industrial Commission, relying on *Jacobsen Const. v. Hair*, 667 P.2d 25 (Utah 1983), had fixed the industrial injury impairment at 6% on a partial-person basis rather than at 10% on a whole-person basis.[4] In reversing, the Supreme Court held that the 10% and 20% threshold figures of the 1981 amendment are whole-person rather than partial-person ratings.[5] *Second Injury Fund v. Streator Chevrolet*, 709 P.2d at 1183.

**2.** The amendment actually addressed only a part of the Commission's disagreement with the Court. Although the amendment "displaced" the *Ortega* definition of "substantially greater," it did not upset the Court's ruling "on the lack of need for a causal or functional relationship between impairments...." *Second Injury Fund v. Streator Chevrolet*, 709 P.2d at 1180 n. 1.

**3.** Impairment ratings based on "whole-man" figures represent the percentage of disability to a previously unimpaired employee while impairment ratings based on "partial-man" figures represent the percentage of disability to a previous-

ly impaired employee. *Jacobsen Constr. v. Hair*, 667 P.2d 25, 26 (Utah 1983).

**4.** The *Hair* decision held that combined partial-person impairment ratings rather than whole-person impairment ratings must be used when allocating responsibility between the Second Injury Fund and the employer. *Jacobsen Constr. v. Hair*, 667 P.2d at 27-28.

**5.** While not mentioned in *Streator*, apparently because the case concerned a 1982 accident, the 1984 amendment to the statute specifically required the utilization of "a whole person uncombined" rating. 1984 Utah Laws, Ch. 79, § 1.

In refusing to apply the impairment standards articulated in *Hair*, the Court in *Streator* characterized the entirely different purpose of the threshold requirements as being "to assure that both the industrial injury and total impairments reach certain fixed levels of seriousness before any nonaggravating preexisting impairments are compensated." *Id.* at 1181. In other words, the threshold requirements are fixed so as to prevent the "tagging on" of substantial preexisting conditions to inconsequential injuries.

In this case, the administrative law judge found that Otvos's congenital defects in his arms were attributable to non-industrial causes preexisting the industrial accident. These defects were not compensable because the industrially-caused 5% impairment did not meet the 10% minimum threshold requirement under § 35-1-69(1)(b). Otvos concedes the 5% permanent impairment resulting from the 1984 accident does not meet the 10% minimum threshold requirement but argues that the judge should have *combined* the impairment resulting from that accident with his two previous leg impairments of 15% and 3% to satisfy the minimum threshold requirement.

## STATUTORY INTERPRETATION

■ Whether several injuries can be combined to meet the 10% threshold requirement imposed by the 1981 amendments is a question not yet decided by either this court or the Utah Supreme Court. Its resolution turns on an interpretation of the term "injury" as used in subsection (1)(b) of the statute. Under that provision, compensation will not be awarded in a nonaggravation situation "unless the percentage of permanent physical impairment attributable to *the* industrial *injury* is 10% or greater...." Utah Code Ann § 35-1-69(1)(b) (1987) (emphasis added).

The Second Injury Fund argues that this question was all but answered by the Utah Supreme Court in its recent decision in *Richfield Care Center v. Torgerson*, 733 P.2d 178 (Utah 1987). While it is true that

in *Torgerson* the Court held that "the Commission must consider separate accidents *serially* in order to determine the percentage of impairment attributable to each accident and the proportion the preexisting impairment bears to the total combined impairment," *id.* at 180 (emphasis added), it did so in an entirely different context than the issue presented to this court.

In *Torgerson*, the Court found that the Commission erred in treating two incidents as a single industrial accident rather than serially in apportioning liability between the employer and the Second Injury Fund. *Id.* However, we are hesitant to read the holding in *Torgerson* that accidents should be considered "serially" for the purpose of apportioning liability as a broad rule that accidents should be considered "serially" for all workers' compensation purposes. *Cf. Second Injury Fund v. Streator Chevrolet*, 709 P.2d 1176, 1181 (Utah 1985) (rejecting use of partial-person ratings in considering whether threshold requirements were met even though such ratings were properly used in allocating compensation between employer and Second Injury Fund). Though *Torgerson* is not controlling in this case, its holding is consistent with the Second Injury Fund's position that, at least under certain circumstances, injuries must be considered individually for purposes of determining compensation under the statute.

In addition to relying on *Torgerson*, the Second Injury Fund argues that the focus throughout the language of the Combined Injury Statute is upon the industrial "injury," not industrial "injuries," even though the preexisting impairments may be a combination of several related and/or unrelated injuries or other conditions. It urges us to give the statute a plain reading which would deny Otvos compensation for his unrelated, preexisting infirmities.

Otvos, on the other hand, argues that the statute should not be given a strict interpretation but should be liberally construed so as to provide compensation for those infirmities. He claims the word "injury" in subsection (b) means all of his injuries combined and that he should not be denied

compensation simply because he had the misfortune of sustaining several small injuries while working at the school rather than just one large injury.

This court has previously recognized that the word "injury," in common parlance, means *"an act* that damages, harms or hurts." *State v. Jones,* 735 P.2d 399, 402 (Utah Ct.App.1987) (quoting *Webster's Third New International Dictionary* 1164 (1986)). Though we ultimately rejected the ordinary meaning of the word "injury" in *Jones* for purposes of construing a child abuse statute, we did so based on our view of the legislative intent in drafting the statute in question. 735 P.2d at 402.

This court's primary responsibility in construing legislation is to give effect to the intent of the Legislature. *E.g., State v. Jones,* 735 P.2d 399, 402 (Utah Ct.App. 1987). Both parties in this case agree that the intent of the Legislature in drafting the 1981 amendments was to prevent tagging on substantial preexisting conditions to inconsequential injuries. That is, to avoid the scenario where an individual stubs his or her toe and thereby becomes entitled to compensation for all preexisting, unrelated impairments such as "thirty-year-old deer hunting accidents, old football injuries, and psychological disorders...." *Second Injury Fund v. Streator Chevrolet,* 709 P.2d at 1183 (quoting *A Sunset Audit of Utah State Industrial Commission,* Report No. 84-12 of the Office of the Legislative Auditor General to the Utah State Legislature (Oct. 1984)).[6] The Second Injury Fund equates Otvos's demand in this case to precisely that which the Legislature sought to avoid in drafting the 1981 amendment to § 35-1-69.

Otvos counters that the purpose behind the statute is to provide compensation only for substantial impairments; since he is substantially impaired, albeit as the result of several rather than a single accident, compensation is consistent with the purpose of the amendment. He asks this court, in effect, to apply the analysis it used in *Jones* to reject the ordinary meaning of the word "injury" in this context as well. In *Jones,* the defendant was convicted of second-degree felony child abuse which had resulted in the death of her baby. The child abuse statute defined "serious physical injury" in terms of *"any* physical injury which creates a ... substantial risk of death." *State v. Jones,* 735 P.2d at 401. The defendant equated "any" with "one" and argued that since no *one* of the instances of abuse to the child had created a substantial risk of death, she could not be found guilty of causing serious physical injury under the statute. *Id.*

In examining the legislative intent behind the child abuse statute in *Jones,* we found that the Legislature had provided in the child abuse act a definition which was expansive and clear and which precluded the construction argued for by the defendant. 735 P.2d at 402. By contrast, § 35-1-45 of the Utah Workers' Compensation Act provides for compensation to an employee who is "injured ... by accident arising out of or in the course of his employment...." Utah Code Ann. § 35-1-45 (1987). The focus of this provision has been on what constitutes a specific "accident,"[7] making *Jones* -type analysis, with its focus on overall impairment rather than the contributing incidents, entirely inappropriate in at least this aspect of the workers' compensation setting.

Moreover, in examining the legislative intent behind the child abuse statute, this

---

**6.** The Sunset Audit is a document produced by the Legislative Auditor General, pursuant to Utah's sunset review legislation, which examined the Industrial Commission and the legislation it administers. According to the Utah Supreme Court, the document recommends that the Combined Injury Statute be even more sharply limited, if not repealed, because it no longer serves the purpose for which it was designed and awards are no longer consonant with the basic policy behind the workers' compensation statutes which it was designed to complement. *Second Injury Fund v. Streator Chevrolet,* 709 P.2d at 1183.

**7.** *See* e.g., *Richfield Care Center v. Torgerson,* 733 P.2d 178, 179-80 (Utah 1987); *Allen v. Industrial Comm'n,* 729 P.2d 15, 22 (Utah 1986) ("an accident is an unexpected or unintended occurrence that may be *either* the cause *or* the result of an injury"); *Champion Home Builders v. Industrial Comm'n,* 703 P.2d 306, 308 (1985).

court refused to assume that the Legislature intended to distinguish between severe abuse caused by a single violent act and severe abuse typified by a series of violent acts with a cumulatively debilitating effect. *State v. Jones*, 735 P.2d at 402. In drafting § 35-1-69(1)(b), on the other hand, the Legislature specifically allowed for consideration of an applicant's overall impairment in imposing the 20% threshold requirement. That is, in addition to the 10% or greater impairment caused by the industrial injury, "the percentage of permanent physical impairment resulting from all causes and conditions, including the industrial injury," must be greater than 20%. Utah Code Ann. 35-1-69(1)(b) (1987). Clearly then, if the Legislature intended to allow for the accumulation of injuries under the 10% threshold requirement, it knew what language to use, as indicated by the language describing the 20% requirement.

■ Since Otvos is 50% permanently impaired, he easily meets the 20% threshold. However, he simply does not meet the 10% threshold of permanent physical impairment attributable to a single, relevant industrial injury and is therefore not entitled to compensation for the preexisting congenital birth defects in his arms.[8] Accordingly, we affirm the order of the Industrial Commission.

## APPROPRIATE FORUM FOR CHANGE

In affirming the decision below, we acknowledge the absurdity, in certain respects, of this result. Under our interpretation of the statute, Otvos would be entitled to the compensation he seeks if he was substantially impaired in one fell swoop, rather than piecemeal. For example, the Second Injury Fund concedes that Otvos would have been entitled to such compensation had he been substantially injured in one play of a football game with a group of students, but not if he came to that same condition as a result of the cumulative effect of injuries sustained in a series of such football games, or perhaps even in a series of rough downs in a single game.

While we recognize it is peculiar to have substantive rights turn on the fortuitous circumstance of whether an individual gets hurt in one blow or several, and condemned such an approach in *Jones*, we are mindful of the Legislature's recent consideration of the statute and the changes it made to, at least in part, minimize opportunities for judicial creativity. The recentness of the Legislature's consideration and the fact that the changes were designed to undo controversial judicial solutions make it especially appropriate that we read the statute conservatively, more with an eye to implementing the scheme the Legislature selected than to doing justice as we happen to see it.

In affirming the decision of the administrative law judge in this case, the Industrial Commission acknowledged that § 35-1-69 "is in need of amendment and when applied can occasionally cause similarly situated employees to be treated somewhat differently." The Commission realized, however, as do we, that "the remedy of this is in amending the legislation" rather than giving the statute an interpretation contrary to its plain meaning. As the Supreme Court recognized in *Streator* with respect to the 1981 amendments, "[t]he legislature is certainly better suited than we to weigh policy considerations and to articulate new standards for the Commission to follow, especially when the statute with which we are faced is not a model of clarity." 709 P.2d at 1184.

The Combined Injury Statute has long been the subject of considerable controversy and disagreement between the Utah Supreme Court and the Industrial Commission. While "[a]ll this may be coming to a head with the Sunset Audit's recommendation, endorsed by the Commission, that the

---

8. It is important to note that the leg impairments which Otvos wishes to combine with his 1984 back impairment in order to reach the 10% threshold were previously rated and compensated as permanent partial disabilities. Had he pressed the claim then, he might have received permanent partial disability compensation for the condition in his arms in connection with the 15% right leg injury, but he settled that claim, pursuant to a compensation agreement, without consideration of his preexisting conditions.

statute be even more sharply limited if not repealed," *id.* at 1183, "[t]he legislature has studied and acted upon the matter." *Id.* at 1184. Meanwhile, "[w]e must respect its actions and leave with it the responsibility for further statutory changes." *Id.*

BENCH and BILLINGS, JJ., concur.